Baird et al., Appellants, *v.* Dun & Bradstreet, Inc., Appellant.

Argued October 7, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Arthur R. Gorr,* with him *Stein and Winters,* for plaintiffs.

*Edmund S. Ruffin, III,* with him *Clyde A. Armstrong,* and *Thorp, Reed & Armstrong,* for defendant.

OPINION BY MR. CHIEF JUSTICE BELL, December 20, 1971:

On August 4, *1961,* appellants George Baird, Richard Lawson, Harry Belinsky and Duquesne Building & Supply Co., Inc. (hereinafter referred to as Duquesne) filed a complaint in a trespass action against Dun & Bradstreet, Inc. (hereinafter referred to as D & B), which alleged that (1) *on or about January 19, 1961,* D & B published and sent to its subscribers a written credit report on Duquesne containing a defamatory report that George R. Baird was indicted for adultery; (2) *on or about January 19, 1961,* D & B published a defamatory report charging the individual appellants with embezzlement; and (3) Duquesne was also injured by these defamatory reports. Plaintiffs did not attach to their complaint a copy of any of the alleged

defamatory reports. At trial, Lawson, Belinsky and Duquesne were nonsuited for failure to prove publication of defamatory material. The jury returned a verdict of $50,000 for Baird for damages resulting from the defamatory report about Baird's adultery in *1941*. D & B filed motions (1) for judgment n.o.v. and (2) for a new trial; a new trial was awarded by the lower Court because the verdict was excessive, but defendant's motion for judgment n.o.v. was denied. From each of these lower Court Orders (i.e., decisions), each losing party appealed.

Duquesne was formed by the individual appellants in November 1960. On *January 19, 1961,* pursuant to requests from subscribers, D & B *published a written credit report* concerning Duquesne which described the financial condition of the company and gave a brief history of its officers, who are the individual appellants herein. The history mentioned that these men had all been employed by Glassport Lumber & Supply, Inc. (hereinafter referred to as Glassport), and also stated:

"George Beard* . . . Allegheny County Criminal Records show that George Beard was indicted for adultery in June 1941. The case was tried August 14, 1941 and returned no bill by grand jury. On the same date, Grand Jury filed a plea and Beard was ordered to pay $4 per week for five years as well as $3 per week for nine years and $200 court costs. . . .

. . .

"As is reported above, three of the officers of this business were previously associated with Glassport Lumber & Supply Co. Investigation discloses that there was some dissension between these individuals

---

* Several spellings and expressions in the D & B reports are incorrect, and several are extremely awkward.

and the principals, but no formal charges have been made by either party."

The plaintiffs contend that the above language, when read in conjunction with the language of the report concerning Glassport which was published February 24, 1961 (see infra), constituted a false accusation of embezzlement.

D & B also prepared other reports on Duquesne, but, *because of lack of proof of publication, the trial Judge excluded them from evidence.* A report which D & B calls an inter-office memorandum was prepared on *January 9, 1961,* and contained the following:

"Though no case has yet appeared of record in the matter, it is reported that funds to finance the starting of this business [Duquesne] were procured by embezzlement from Glassport Lumber & Supply Co., Inc., Glassport, Pa., where Harry Belinsky was responsibly employed before entering subject business and where George Beard worked in the sales department. Belinsky in a November 4, interview said that principals' savings of $10,000 were used to start the business but other sources say Glassport Lumber funds of undetermined amount were used plus inventories withdrawn over a period of two months. . . ."

We agree with the lower Court that the evidence to prove publication of this memorandum was inadequate.

On *January 20, 1961,* another credit report was prepared by D & B which contained the following:

"In answer to specific inquiry: The report never stated that Harry Belinsky and George Beard were arrested on warrants for embezzlement. Glassport Lumber is in process of having an audit of the books and it was asserted that warrants would be issued for the arrest of Belinsky and Beard. The audit has not been completed and the same source is no longer threatening to issue warrants."

D & B likewise prepared a report concerning Glass-port which was *published February 24, 1961,* which contained the following:

"Patterson [Glassport's president] has stated that an audit is underway at the present time, to determine how much loss was sustained in thefts over the past several years. It is understood that some of the equity corporations cash as well as some inventory has been stolen. Full details have not been submitted.

"In previous interview on Oct. 31, 1960, Patterson stated that on Nov. 22, 1960 [sic] three of his former employees left the business. At their departure, a shortage of $10,000 of company funds had been found by his corporation in addition to $5,000 worth of inventory. He afforded that the inventory had been withdrawn over a period of approximately two months."

This report was also excluded for lack of proof of publication.

### Embezzlement Defamation

It is clear that the report of *January 19, 1961, standing alone,* does not show that D & B published a defamatory report charging plaintiffs with embezzlement. That report merely states that there was dissension between the appellants and Glassport and that *no formal charges had been lodged by either party.* This is not a communication tending to so harm another's reputation as to lower him in the estimation of the community or deter third persons from associating or dealing with him. *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A. 2d 899; *Cosgrove S. & C. Shop, Inc. v. Pane,* 408 Pa. 314, 182 A. 2d 751; Restatement, Torts, §559. To be defamatory, these words must have been understood by the "recipient correctly, or mistakenly but reasonably," to mean what the defamed party asserts they were understood to mean. Restatement,

Torts, §563; *Cosgrove S. & C. Shop, Inc. v. Pane*, 408 Pa., supra.

A cause of action in libel is not adequately pleaded by merely alleging, without any supporting facts or exhibits, that a publication is scandalous, malicious, defamatory and libelous. *Volomino v. Messenger Pub. Co.*, 410 Pa. 611, 189 A. 2d 873. Without the D & B memorandum of January 9 and its report of January 20 on Duquesne, and/or the February 24 report on Glassport, each of which was properly excluded because of lack of proof of publication,* it is clear that no defamatory meaning could reasonably be ascribed to these words. Cf. *Dempsky v. Double*, 386 Pa. 542, 126 A. 2d 915; *McAndrew v. Scranton Repub. Pub. Co.*, 364 Pa. 504, 72 A. 2d 780; Restatement, Torts, §563.

Plaintiffs contend, however, that when their complaint stated that *on or about January 19, 1961*, D & B published defamatory matter concerning them, it was intended to and should include any and every D & B report issued *on or near* that date, i.e., the D & B reports of January 9, January 20 and February 24, supra. This is undoubtedly the general rule. See *Mazzarella v. Whelan*, 276 Pa. 313, 120 Atl. 141; *United States Fidelity & Guaranty Co. v. Grace Construction Co.*, 263 F. 283, 293 (3d Cir. 1920). Because of the unusual circumstances in this case and for the reasons hereinafter stated, we cannot agree with plaintiffs' contention.

A period of over three years elapsed before plaintiffs, through their new counsel, made inquiry as to the issuance of any other reports by D & B. Plaintiffs, through the "discovery rights and privileges" available to them (see Rules 4007 and 4009 of the Pennsylvania Rules of Civil Procedure), could have learned of these additional D & B reports and could and should have

---

* See infra.

included them in their complaint or amended complaint. This inexcusable delay is so unfairly prejudicial to the defendant (D & B) that we hold that the three-year-old memoranda or reports recently discovered by plaintiffs cannot be held to be included in plaintiffs' complaint or admissible in evidence.

Furthermore, once it is shown, as D & B has in the instant case, that a credit reporting agency is in the business of reporting financial information to subscribers who request such service, the reports are prima facie privileged and the plaintiff has the burden of proving abuse of that privilege. Cf. *Altoona Clay Products, Inc. v. Dun and Bradstreet, Inc.,* 367 F. 2d 625; Act of August 21, 1953, P. L. 1291, §1, 12 P.S. §1584a(1)(g). Thus, it was incumbent upon plaintiffs to show an abuse of this privilege and this they have failed to do.

We have considered all of plaintiffs' other contentions with respect to these embezzlement charges and find no merit in any of them.

For the above-mentioned reasons we affirm the non-suits.

### Adultery Defamation

Both George Baird and D & B have appealed from the Order of the Court below granting a new trial after the jury had awarded Baird a $50,000 verdict based on the various statements in the D & B January 19, *1961* report that he had been indicted for adultery in *1941,* and had been compelled to pay $7 a week and Court costs. A charge of adultery is libellous per se, and special damages may be proved to enlarge the ordinary verdict. The Court below rejected defendant's motion for judgment non obstante veredicto but granted a new trial because the verdict was excessive. The Court said: "The verdict . . . is in a shocking amount and

can only be rationalized on the theory that the jury was thinking in terms of all the plaintiffs and deciding that the plaintiff corporation and its owners had been driven out of business by the defendant. This thought was brought home to them in the opening and closing speeches and in innumerable statements included in questions and otherwise in between."

D & B contends that judgment non obstante veredicto and not a new trial should have been granted, because (1) the publication was not defamatory per se, so that Baird had to prove special damages, which he failed to do, and (2) as a credit reporting agency, it enjoys a conditional privilege, which it did not abuse, to publish defamatory matter. We disagree with these contentions.

It is a general rule that defamatory words are not actionable, absent proof of special damage. However, there are certain well-recognized exceptions, one of which is the false imputation of immorality or the commission of a crime. *Solosko v. Paxton,* 383 Pa. 419, 119 A. 2d 230. See also, Comments *f* and *d* of §569, Restatement, Torts.* Thus, the January 19 report falsely stating that Baird had been indicted for adultery must be deemed libelous per se, and does not require proof of any special damage.

With regard to D & B's claim of privilege, it is clear that a credit reporting agency has a conditional privilege to publish defamatory matter, provided the publications are communicated in response to a request.

---

* Comment *f* of §569 of the Restatement, Torts, states: "It is actionable per se to accuse in libelous form (as defined in §568) either a man or woman of any sexual misconduct irrespective of whether the misconduct constitutes criminal offense or whether it harms the other in his business, trade or profession. Thus it is actionable per se to accuse by a libelous publication either a man or woman of adultery or fornication. . . ."

*Altoona Clay Products, Inc. v. Dun and Bradstreet, Inc.*, 367 F. 2d, supra; *Hartman & Co. v. Hyman & Lieberman*, 287 Pa. 78, 134 Atl. 486. See also, Restatement, Torts, §595. In *Dempsky v. Double*, 386 Pa., supra (pages 546-547), this Court, through Mr. Chief Justice STERN, defined a conditional privilege in the following manner: "A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable and probable cause (Conroy v. Pittsburgh Times, 139 Pa. 334, 21 A. 154; Matson v. Margiotti, 371 Pa. 188, 196, 88 A. 2d 892, 896), and it is always for the court to determine whether the alleged defamatory publication is thus privileged; if found so to be, and if there be no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit or give binding instructions for the defendant: Neeb v. Hope, 111 Pa. 145, 154, 2 A. 568, 572; Restatement, Torts, §619. . . ."

Under the Act of August 21, 1953, P. L. 1291, Sec. 1, 12 P.S. §1584a (Supp. 1970), defendant has the burden of proving privilege. Corabi v. Curtis Publishing Company, 441 Pa., supra. However, where a conditional privilege "is evidenced, as here, from the plaintiff's case, the plaintiff will be nonsuited unless he can prove the abuse of that privilege. . . ." *Rankin v. Phillippe*, 206 Pa. Superior Ct. 27, 32, 211 A. 2d 56.

Plaintiffs' proof of abuse was that D & B failed to verify the spelling of George Baird's name and thereby published false and defamatory material of and concerning him. This is unquestionably an assertion of negligent preparation by D & B. We think that this is sufficient.

Moreover, the actual malice test of *New York Times v. Sullivan*, 376 U.S. 254, requiring proof that the statement was made with knowledge that it was false or with reckless disregard of the truth, is not required to

destroy this conditional privilege. We agree with the United States Court of Appeals for the Third Circuit, which has very recently held (reversing the Court below) that the *Times* rule does not extend to entities such as D & B which disseminate private subscription credit reports. *Grove v. Dun and Bradstreet, Inc.,* 438 F. 2d 433 (3d Cir. 1971). Cf. *Purcell v. Westinghouse Broadcasting Company,* 411 Pa. 167, 191 A. 2d 662, and *Montgomery v. Dennison,* 363 Pa. 255, 69 A. 2d 520. See also §603 of the Restatement, Torts.

Baird asserts that the Court below erred in granting a new trial because the verdict was excessive. However, the grant of a new trial because the verdict was excessive (or inadequate) lies within the sound discretion of the trial Court and will be sustained by an appellate Court in the absence of a clear abuse of discretion or an error of law which controlled the verdict or the outcome of the case. *Black v. Ritchey,* 432 Pa. 366, 248 A. 2d 771; *Tranter v. Mandelbaum,* 427 Pa. 326, 234 A. 2d 845; *Connolly v. Philadelphia Transportation Company,* 420 Pa. 280, 216 A. 2d 60.

In *Tranter v. Mandelbaum,* 427 Pa., supra, the Court said (page 328) : "We have carefully reviewed appellant's brief and have studied the record. We find no clear abuse of discretion or error of law which controlled the outcome of the case. Zerman v. Canonsburg Boro., 423 Pa. 450, 223 A. 2d 728; Amon v. Shemaka, 419 Pa. 314, 214 A. 2d 238; Trimble v. Merloe, 413 Pa. 408, 197 A. 2d 457; DeMichiei v. Holfelder, 410 Pa. 483, 189 A. 2d 882."

In *Black v. Ritchey,* 432 Pa., supra, the Court said (page 369) : "Our scope of review in deciding whether the lower Court should have granted a new trial *on the ground that the verdict was inadequate*\* is whether the lower Court committed a clear or gross abuse of dis-

---

\* Italics in *Black v. Ritchey.*

cretion. Greco v. 7-Up Bottling Co. of Pittsburgh, 401 Pa. 434, 165 A. 2d 5, and cases cited therein; Carpenelli v. Scranton Bus Company, 350 Pa. 184, 38 A. 2d 44; Nikisher v. Benninger, 377 Pa. 564, 105 A. 2d 281; Karcesky v. Laria, 382 Pa. 227, 114 A. 2d 150; Takac v. Bamford, 370 Pa. 389, 88 A. 2d 86."

We have carefully reviewed the record and find no clear abuse of discretion; on the contrary, the verdict was so excessive in the light of the facts in the instant case that it is difficult to understand how a jury could have ever rendered such a verdict.

The Orders of the Court below are affirmed.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice COHEN took no part in the decision of this case.