Frank MARCONE

v.

PENTHOUSE INTERNATIONAL, LTD. and Edward Rasen.

Civ. A. No. 78–3733.

United States District Court, E. D. Pennsylvania.

Feb. 22, 1982.

John A. Luchsinger, Media, Pa., for plaintiff.

Gregory S. Rubin, Philadelphia, Pa., for Penthouse Intern.

Grutman, Schafrann & Miller, New York City, for defendant.

## MEMORANDUM

BRODERICK, District Judge.

This defamation action is currently before the Court on the motion of defendant, Penthouse International, Ltd. for summary judgment. For reasons set forth herein, defendants' motion is denied.

### I. *Undisputed Facts*

In 1976, plaintiff Frank Marcone, an attorney maintaining an office in Media, Pennsylvania, was arrested by Federal Drug Enforcement Agents pursuant to an indictment issued by a Federal Grand Jury for the Eastern District of Michigan, Southern Division (Detroit). A superseding indictment charged, *inter alia*, that Frank Marcone, Frederick Frey and other named defendants willfully, knowingly and unlawfully did combine, conspire, confederate, and agree together and with each other, and with divers other persons to unlawfully possess with intent to distribute, and to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and 846. More specifically, the indictment charged as follows:

It was further a part of said conspiracy that defendant and co-conspirator FRANK MARCONE, during the period of this conspiracy, would supply sums of United States currency to defendant and co-conspirator FREDERICK R. FREY in Philadelphia, Pennsylvania for the purpose of investing said monies in the distribution of marijuana by FREDERICK R. FREY for a profit.

\* \* \* \* \* \*

During May, 1974, FRANK MARCONE gave $25,000 in United States currency to FREDERICK R. FREY in Philadelphia, Pennsylvania, for the purpose of purchasing multi-hundred pound quantities of marijuana in California.

In May 1976, the indictment against Mr. Marcone was dismissed. The Assistant United States Attorney was quoted in newspaper accounts submitted by Penthouse, as stating that charges were dismissed without prejudice because of a legal technicality in tying Marcone to the larger conspiracy involving individuals from San Diego to Montreal. Mr. Marcone has not been re-indicted.

In October 1978, defendant, Penthouse International, Ltd. (Penthouse) published and distributed for sale the November 1978 issue of "Penthouse, The International Magazine for Men" which included an article entitled "The Stoning of America," authored by defendant Edward Rasen, who has not been served in this action. Beneath the title of the article appeared a descrip-

tive subtitle which stated, "Marijuana is now big agribusiness—a $12 billion a year corporate growth crop." The article, reproduced in part below, contains the following reference to Mr. Marcone:

"Today there is no meaningful deterrent to narcotics trafficking," says U.S. Sen. Sam Nunn. "Sophisticated narcotics dealers, with their vast financial resources, could reasonably determine that crime does, in fact, pay." The hippy dope dealers of the 1960s counterculture have been replaced by "hip" businessmen who sport short hair, three-piece suits, and college degrees and have transformed a cottage industry into a multi-national corporate agribusiness, in which guns and murder enforce executive-suite investment decisions. The new breed of traffickers are young, intelligent and upper middle class. They operate outside traditional crime families and ghetto areas, though, by any standard, large-scale marijuana smuggling can be considered organized crime. However, the names of known criminals or members of Mafia families seldom appear in the investigations or court records of busted major syndicates.

Instead, the typical new dope businessman is an attorney. We have criminal attorneys, and attorney criminals, says Fred Rody, Miami DEA regional director. "There is such a thing as criminal consort. We know that some of the large smuggling operations have lawyers who are providing them with all the advice they need to operate."

*However, even after DEA agents spent more than two years building an airtight case against a Mexican-American syndicate involved in the multi-million-dollar, nationwide wholesaling of marijuana, federal judges did not sentence any of the attorney criminals to prison.*

Examples: Richard J. Litner, a practicing attorney in Boston, financed sales in New England and set up "cover" corporations, yet was offered the opportunity by federal judge Charles W. Joiner, without the consent of the prosecutor, to plead guilty to reduced charges. He was then placed on one-year probation so that he would not be disbarred and deprived of his livelihood. Attorney John K. Lowe, of Denver and Kansas City, made a hand-to-hand sale of 400 pounds of marijuana to an undercover agent for $40,000. He received two years' probation and a $1,000 fine. As a law student, George Weingarten, now a practicing attorney in San Diego, once received a gold Rolex wristwatch as a sales reward for distributing 10,000 pounds of marijuana in one week. He became a DEA informant in exchange for a reduced sentence of one-year probation. Maria Blanca-Vargas Reid, executive director of the San Diego Mental Health Association, handled a $35,000 drug payment. Charges were dismissed in the interest of justice after she cooperated with federal authorities and revealed the whereabouts of her son, Robert Craig Chipman, and his criminal associates. *Frank Marcone, an attorney from the Philadelphia area, contributed down payments of up to $25,000 on grass transactions. Charges against him were dismissed because he cooperated with further investigations.* Charles Sargent Hewett, a law student from Corona Del Mar, Calif., wholesaled up to $750,000 of marijuana per week. Charges were dismissed at the request of the U.S. attorney's office for his cooperation in identifying all the people he sold to, even though he was involved in the murder of his former distributor in Boston and the attempted murder of one of his associates from San Francisco. And so on. (emphasis added)

## II. *Applicable Law*

Mr. Marcone complains in this action that the article has defamed him in that it declares that he was actually guilty of the offense and that the charges were dismissed because he cooperated with the police by providing information. Mr. Marcone contends that these statements are not true and that they have caused him harm and ridicule among his neighbors, business acquaintances and other citizens. Mr. Mar-

cone also asserts that the use of the phrase "attorney criminals" is also defamatory and that the mention of his name in the context of the article is defamatory in that it implies that he participated or was involved in the type of illegal activities discussed in the article. Penthouse presents several grounds in support of its motion for summary judgment. In essence, they are: (1) the statements are not capable of defamatory meaning; (2) even if defamatory, the statements are privileged under Pennsylvania law as a substantially fair and accurate report of a judicial proceeding; (3) plaintiff is a public figure and cannot make the showing of actual malice required of public figures by the First Amendment; (4) the article involved matters of public concern and under Pennsylvania law, in cases where the alleged defamatory publication involved matters of "public or general concern," the defendant must prove actual malice, and plaintiff cannot make such a showing in this case; (5) the statements are true, and (6) the plaintiff cannot prove special damages.

The parties agree that Pennsylvania law governs the substantive issues in this case and inasmuch as Pennsylvania has an interest in the outcome of this litigation—plaintiff is a citizen of Pennsylvania and the alleged injury to plaintiff's reputation and business apparently occurred in Pennsylvania, the locus of his legal practice—there is no cause for this Court, sua sponte, to challenge the parties' consensual choice of law. *See Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 270 (3d Cir. 1980) and cases cited therein at p. 270 n.13. Accordingly, this Court shall look to the law of Pennsylvania and, insofar as applicable, to the First Amendment of the Constitution of the United States in disposing of this summary judgment motion.

### A. The Defamatory Character of the Statements

■ In an action for defamation in Pennsylvania, the plaintiff bears the burden of proving both the defamatory character of the communication and the under-

standing by the recipient of it as intended to be applied to the plaintiff. 42 Pa.Cons. Stat.Ann. Tit. § 8343 (1979). It is the function of the court to determine, in the first instance, whether the communication complained of is capable of a defamatory meaning. *Franklin Music Co. v. American Broadcasting Co.*, 616 F.2d 528, 540 (3d Cir. 1979); *Hanish v. Westinghouse Broadcasting Company*, 487 F.Supp. 397 (E.D.Pa. 1980); *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442, 273 A.2d 899, 904 (1971). A statement is defamatory where it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 267 (3rd Cir. 1980); *Corabi v. Curtis Publishing Co.*, 441 Pa. at 442, 273 A.2d at 904.

■ Penthouse has attempted to break down the alleged defamatory statements into a series of phrases and to argue that each phrase, i.e., "charges against him were dismissed" "because he cooperated with further investigations," is not capable of defamatory meaning. However, in determining the meaning of an allegedly libelous communication, it must be read in the context of the entire communication. *Corabi v. Curtis Publishing Company*, 441 Pa. at 444, 273 A.2d at 906; Restatement (Second) of Torts, § 563, comment d (1977).

The article refers to "attorney criminals" and lists Mr. Marcone as an example of an attorney criminal. The article states that:

"even after DEA agents spent more than two years building an airtight case against a Mexican-American syndicate involved in the multi-million-dollar nationwide wholesaling of marijuana, federal judges did not sentence any of the attorney criminals to prison.

Examples.... Frank Marcone, an attorney from the Philadelphia area, contributed down payments of up to $25,000 on grass transactions. Charges against him were dismissed because he cooperated with further investigations."

■ There is no question that the above statements are capable of defamatory

meaning in that they clearly impute that Mr. Marcone committed a crime. Furthermore, the statements are actionable as libel per se in that they impute the commission of an indictable crime by Mr. Marcone. *See Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 274, 285 A.2d 166, 171 (1971); *Solosko v. Parton*, 383 Pa. 419, 119 A.2d 230, 232 (1956); Restatement (Second) of Torts, § 571.

### B. *Defendant's Claim of Qualified Privilege*

 Penthouse claims that the statements relating to Frank Marcone contained in the article "The Stoning of America" were privileged under the common law of Pennsylvania as a fair and substantially accurate report of official or judicial proceedings. *See Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A.2d 53 (1971); Restatement (Second) of Torts, § 611 (1977); Prosser, Handbook of the Law of Torts, § 118 at 830–31 (4th ed. 1971). This privilege, however, is conditional rather than absolute and "is forfeited if the publisher steps out of the scope of the privilege or abuses the occasion." *Sciandra v. Lynett*, 409 Pa. 595, 600, 187 A.2d 586, 589 (1963); *see Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. at 401–402. Where, however, there is a question as to whether the statement is "a substantially fair and accurate" report of the proceedings, it is a question of fact to be decided by the jury unless the facts are such that but one conclusion can be drawn. *See Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. at 402; *Biggans v. Foglietta*, 403 Pa. 510, 513, 170 A.2d 345, 346 (1961).

Penthouse has attached to a memorandum accompanying its motion, a copy of the Superseding Indictment in Criminal Action No. 6–180–191 filed in the United States District Court for the Eastern District of Michigan, Southern Division, and points out that paragraph 35 of that indictment states:

> During May, 1974, Frank Marcone gave $25,000 in United States currency to Frederick R. Frey in Philadelphia, Pennsylvania, for the purpose of purchasing multi-hundred pound quantities of marijuana in California.

Penthouse asserts that the statement appearing in its magazine is almost entirely verbatim from the indictment and, therefore, must be considered a fair and accurate report of the proceedings.

An indictment is a document returned by a grand jury containing allegations of criminal conduct; it is merely an accusation that the defendant committed a crime and, under our constitution, an indictment affords no inference of guilt. Every defendant is presumed innocent until such time, if ever, the defendant enters a plea of guilty or the government establishes his guilt beyond a reasonable doubt.

██ In this case, the article published by Penthouse does not state that Mr. Marcone was "indicted for" the stated acts or that he "allegedly" committed criminal acts. Instead, the article simply states as fact that Mr. Marcone contributed down payments of up to $25,000 on grass transactions. In addition, the article states that "charges against him were dismissed because he cooperated with further investigations," a statement further imputing that Mr. Marcone did in fact put up the money for grass transactions. Penthouse has not produced any official record of any official proceeding or, for that matter, any evidence whatsoever in their affidavits or depositions, stating or showing that the proceedings against Mr. Marcone were dismissed because he cooperated with further investigations. Mr. Marcone, on the other hand, has submitted an affidavit denying that the proceedings against him were terminated for the reasons stated in the article as well as denying that he contributed $25,000 for grass transactions. Thus, in light of the fact that the article states as fact that Mr. Marcone contributed down payments of up to $25,000 for grass transactions rather than stating that he was charged with, or allegedly committed such acts, this statement is not a fair and accurate report of a judicial proceeding. Furthermore, since there is no evidence before the Court to indicate that the proceedings against Mr.

Marcone were dismissed because he cooperated with further investigations, there is no basis upon which the Court can conclude that a statement to that effect is a fair and accurate report of any official or judicial proceeding. Thus, summary judgment is not available on the basis of the present record to Penthouse on the asserted privilege for fair and accurate reports of official or judicial proceedings.

## C. *The Public Figure Doctrine*

Defendant next asserts that plaintiff is a public figure for the limited purposes of this action, and that he cannot demonstrate actual malice on the part of Penthouse as required of public figures in defamation actions by *The New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz v. Robert Welsh, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). On the basis of the record presently before the Court, Mr. Marcone cannot be deemed a public figure.

In *Gertz v. Welsh, supra*, the Court identified various classes of public figures.

> Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

418 U.S. at 345, 94 S.Ct. at 3009.

The Court in *Gertz* further stated that the designation of an individual as a public figure may rest on either of two alternative bases:

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

418 U.S. at 351. This record is devoid of evidence that Mr. Marcone is an individual who has achieved such pervasive fame or notoriety that he has become a public figure for all purposes and in all contexts. Penthouse, however, asserts that Mr. Marcone voluntarily injected himself into the midst of this public controversy and may be deemed a public figure for issues relating to drug trafficking. Penthouse bases this contention on the fact that Mr. Marcone (1) chose to represent and associate with persons accused of trafficking in drugs; (2) sought to establish an expertise in the criminal defense of drug traffickers; (3) developed a reputation for such expertise; (4) perpetuated and sustained this reputation; (5) solicited clients in need of this expertise; and (6) promoted, solicited and presented this reputation to the public at large.

While the present record does not contain proof of all the above facts, such evidence would not, in and of itself, establish Mr. Marcone as a public figure for the limited purpose of issues related to drug trafficking. Indeed, Penthouse's argument would make all lawyers public figures for the limited purpose of the issues relating to their field of practice.

In *Gertz, supra*, the Supreme Court was faced with a similar argument. A policeman was convicted of murder. The plaintiff, an attorney who represented the family of the victim in civil litigation against the policeman, brought a defamation action against defendant's magazine which purported to demonstrate that the murder trial was part of a communist conspiracy to discredit local police, that the attorney had arranged the policeman's "frame-up," and implied that the attorney had a criminal record, and labelled him a communist fronter. Despite the fact that the attorney had

long been active in community and professional affairs, had served as an officer of local civic groups and of various professional organizations, and had published several books and articles on legal subjects, the Supreme Court determined "Although petitioner was consequently well known in some circles, he had achieved no general fame or notoriety in the community." 418 U.S. at 352, 94 S.Ct. at 3013. Therefore, the Court concluded that he was not a public figure for all purposes. Turning to the question of the nature and extent of his participation in the particular controversy giving rise to the defamation, the Court stated:

> In this context it is plain that petitioner was not a public figure. He played a minimal role at the coroner's inquest, and his participation related solely to his representation of a private client. He took no part in the criminal prosecution of Officer Nuccio. Moreover, he never discussed either the criminal or civil litigation with the press and was never quoted as having done so. He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome. We are persuaded that the trial court did not err in refusing to characterize petitioner as a public figure for the purpose of this litigation.

█ In this case, on the basis of the present record, it is clear that Mr. Marcone's representation of private individuals on drug charges and his own indictment on such charges does not evidence an attempt on his part to engage the public's attention, or to thrust himself into the vortex of the controversy giving rise to the defamation, or to influence its outcome. Therefore, we determine, on the basis of the present record, that Mr. Marcone is not a public figure for the limited purposes of this action. Therefore, the Court concludes that Penthouse is not entitled to summary judgment on the ground that Mr. Marcone is a public figure who cannot produce evidence of malice as required of public figures by *New York Times* and *Gertz*.

### D. Defendants' Reliance on Matus v. Triangle Publications, Inc.

In *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), three justices of the Supreme Court expressed the view that, where the allegedly defamatory publication involved matters of "public or general" concern, the First Amendment requires the plaintiff, irregardless of whether he is a private or public figure, to prove that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of the truth (malice). The following year the Pennsylvania Supreme Court, in *Matus v. Triangle Publications, Inc.*, 445 Pa. 384, 286 A.2d 357, *cert. denied*, 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972), noting that five members of the *Rosenbloom* Court substantially agreed with the "public or general concern" test, "adopt[ed] as binding the . . . holding of the plurality opinion in *Rosenbloom*." 445 Pa. at 395, 286 A.2d at 363. Subsequently, however, the U.S. Supreme Court retreated from *Rosenbloom* in *Gertz v. Robert Welsh, Inc.*, *supra*, by holding that the protection of First Amendment freedoms does not require persons who are private, as opposed to public, figures to prove malice in a defamation action.

The Pennsylvania Supreme Court has yet to reconsider the *Matus* decision in light of *Gertz*, causing our Third Circuit to describe Pennsylvania's standard of liability for suits brought by private figure plaintiffs as "unsettled." *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 272 (3rd Cir. 1980). Penthouse argues that the *Matus* decision is still good law and that application of the public interest or concern test of *Matus* to the facts of the instant case mandates that Mr. Marcone prove that the allegedly defamatory communications were published by Penthouse with knowledge of their falsity or reckless disregard for the truth.

In predicting whether the Pennsylvania Supreme Court will follow *Gertz* and abandon *Matus*, this Court has been impressed by the reasoning of Judge Luongo in *Mathis v. Philadelphia Newspapers, Inc.*, 455

F.Supp. 406 (E.D.Pa.1978), wherein he concludes:

> When the Supreme Court of Pennsylvania is ultimately faced with the question whether a "private figure" plaintiff may recover for defamation based on a showing of negligence, it will have to resolve that question by drawing on the policies that traditionally have shaped the Pennsylvania law of libel and slander. Although the common-law rule of strict liability is no longer viable in light of *New York Times v. Sullivan*, I see no reason to believe that the Supreme Court of Pennsylvania, which is now free to abandon the *Rosenbloom* "actual malice" standard in "private figure" cases, will choose to retain that standard. Nor have defendants pointed to any aspect of Pennsylvania law that would support such a prediction. Accordingly, I conclude that the *Matus* decision is no longer good law, and that a "private figure" defamation plaintiff may recover under Pennsylvania law based upon a showing of negligence. [footnote omitted]

*Id.* at 412.

 Recently, in *Medico v. Time, Inc.*, 509 F.Supp. 268 (E.D.Pa.1980), *affirmed*, 643 F.2d 134 (3rd Cir. 1981) Judge Van Artsdalen endorsed Judge Luongo's decision in *Mathis* concluding, as we do now, that the Supreme Court of Pennsylvania, in light of *Gertz*, will retreat from the position taken in *Matus*. Accordingly, we must reject Penthouse's argument that it is entitled to summary judgment on the ground that Mr. Marcone cannot prove malice.

### E. *The Defense of Truth*

 Penthouse contends that under Pennsylvania's law of defamation, truth is an absolute defense to an action of defamation. The Court agrees. Penthouse claims that on the basis of the present record there are no genuine issues of material fact concerning the truth of the statements in the article relating to Mr. Marcone. The Court disagrees. Mr. Marcone's affidavit raises genuine issues of material fact which preclude granting Penthouse's motion for summary judgment on the basis of the defense of truth.

### F. *Penthouse's Claim re Special Damages*

 Penthouse also claims that it is entitled to summary judgment on the ground that the present record shows that Mr. Marcone has not suffered special harm and cannot prove special damages. There is no question that the courts of Pennsylvania have always required proof of special damages in defamation cases which are not actionable per se. *See Fogel v. Forbes*, 500 F.Supp. 1081 (E.D.Pa.1980). However, a motion for summary judgment can be granted only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of demonstrating that these requirements have been met is on the moving party and the non-moving party is entitled to the benefit of all reasonable doubts and inferences that may arise in connection with the consideration of such a motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In applying this standard to the record in this case, the moving party Penthouse has failed to demonstrate that there is no genuine issue as to whether Mr. Marcone has suffered specific harm and special damages. Additionally, as this Court has previously determined in this memorandum, the statements relating to Mr. Marcone are libelous per se and Pennsylvania law is clear that special damages need not be proved in a case where the publication is libelous per se. *Baird v. Dun & Bradstreet*, 446 Pa. 266, 274, 285 A.2d 166, 171 (1971); *Solosko v. Parton*, 383 Pa. 419, 119 A.2d 230, 232 (1956); *see* Restatement (Second) Torts §§ 569–71. Accordingly, summary judgment must be denied in connection with Penthouse's claim that there is no genuine issue of material fact as to the absence of specific harm and special damages.

362

## III. *Conclusion*

Therefore, in accordance with the above determinations, the Court will enter an order denying defendant's motion for summary judgment.