Jack WILLIAMS, Jr.

v.

WCAU–TV, WPVI–TV.

Civ. A. No. 80–2827.

United States District Court,
E.D. Pennsylvania.

Jan. 10, 1983.

Methuselah Z.O. Bradley, IV, Philadelphia, Pa., for plaintiff.

George P. Williams, III, Philadelphia, Pa., for WCAU–TV.

Elihu A. Greenhouse, Philadelphia, Pa., for WPVI–TV.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This diversity defamation action is before the Court on the motions of defendants CBS, Inc., (CBS), operator of WCAU–TV, Channel 10 in Philadelphia, and Capital Cities Communications, Inc. (Capital Cities), operator of WPVI–TV, Channel 6 in Philadelphia, for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Jack Williams, Jr. alleges that on or about June 11, 1979 defendants defamed him by broadcasting television news reports which showed plaintiff in handcuffs being led by Philadelphia police officers to a police van, while reporting that a bank had been robbed nearby. Plaintiff contends that the broadcasts were intended to convey the meaning and were understood to mean that plaintiff was an apprehended bank robber. Plaintiff sets forth counts of defamation, intentional infliction of emotional distress, and interference with prospective contractual relations and seeks compensatory and punitive damages in excess of $10,000. For the reasons which follow, summary judgment will be entered for defendants on all of plaintiff's claims.

The following facts are undisputed. On June 11, 1979 at about 9:40 a.m., a branch office of the Philadelphia Savings Fund Society (PSFS) located in the Roxborough section of Philadelphia was robbed. A witness reported to police that two men emerged from the bank and escaped in an automobile. This automobile was abandoned at the intersection of Midvale Avenue and Conrad-Warden Streets in the adjoining East Falls section of Philadelphia, and three men jumped out and fled. Two of the men, Ronald Lewis and Joseph Wise, were apprehended on foot near this intersection about twenty minutes after the bank robbery. Police received reports that the third man had boarded a bus, and apprehended the man, Ronald Brown, on a westbound Route K bus a few minutes later. Arrest reports were made and complaints sworn against Ronald Lewis, Joseph Wise and Ronald Brown the same day.

Plaintiff, who had boarded an eastbound Route K bus at Ridge and Midvale Avenues, approximately one-half mile south of the intersection of Midvale and Conrad/Warden, was taken into custody at

about 9:55 a.m. as the bus passed the intersection of Midvale and The Oak Road, approximately three-quarters of a mile north of the intersection of Midvale and Conrad/Warden. The police handcuffed the plaintiff, took him off the bus, and placed him in a police van. He was taken first to the bank and then to the police station. At approximately 4:00 p.m., the testimony of the driver of the bus in which plaintiff was riding at the time of his arrest established that the plaintiff had not been involved in the bank robbery, and plaintiff was released.

Both defendants broadcast television news reports of the robbery and the ensuing police action, which included video-tapes of the police apprehending the suspects in the robbery. The reports of defendant CBS were broadcast on Channel 10 (WCAU–TV) during the 6:00 p.m. and 11:00 p.m. newscasts on June 11, 1979. Defendant Capital Cities broadcast reports the same day on Channel 6 (WPVI–TV) on newscasts at 12:00 Noon, 6:00 p.m. and 11:00 p.m. Transcripts of the Channel 6 newscasts are attached to this opinion as Appendix "A". Defendants have provided in support of their motions for summary judgment copies of the video portions of the broadcasts, which were viewed by the Court and the parties at the hearing on these motions. Plaintiff admitted at the hearing that the videotape provided by CBS did not picture him. Plaintiff has stated that he was pictured on the videotape provided by Capital Cities, and for the purpose of our decision of its summary judgment motion Capital Cities does not dispute that its videotape shows the plaintiff in handcuffs boarding the police van. Plaintiff's name was not mentioned, however, in any of the defendants' broadcasts.

In deciding defendants' motions for summary judgment we must determine whether any disputed issues of material fact exist which would preclude entry of judgment in defendants' favor. *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). Whenever defendant relies upon affidavits, depositions or answers to interrogatories, plaintiff must come forward with affidavits, depositions and answers to interrogatories sufficient to contradict defendants' showing. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 160–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); Fed.R.Civ.P. 56(e). The parties have proceeded under the assumption that Pennsylvania law applies to this case, and since plaintiff is a resident of Pennsylvania and the broadcast was produced and transmitted in Pennsylvania concerning a news event which occurred in Pennsylvania, we see no reason to disturb the parties' choice of law. *See Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 269–70 (3d Cir.1980).

There is no genuine issue of material fact that plaintiff was not pictured on the CBS reports of the bank robbery broadcast on Channel 10 on June 11, 1979, nor was plaintiff referred to either directly or by innuendo in the audio portion of the Channel 10 telecast. Plaintiff admitted that the videotape provided by CBS at the hearing on these motions did not picture him, nor did it mention him. Plaintiff has offered no evidence to contradict the affidavits of Channel 10's assistant news director and media coordinator that the videocassette supplied the Court contains all of the on-location film concerning the bank robbery shot by CBS and that no other statements or pictures concerning the bank robbery were shown on CBS. Further, the affidavits and plaintiff's deposition testimony establish that he was taken into custody by the police at a location approximately three-quarters of a mile from the intersection of Midvale and Conrad/Warden Streets, where the CBS film depicting the apprehension of the suspects was shot.

Since there are no genuine issues of material fact and since the undisputed facts show that the plaintiff was neither pictured nor mentioned on the CBS broadcast, there is no basis for a cause of action against CBS and summary judgment will therefore be entered in favor of CBS.

Defendant Capital Cities admits for the purposes of its summary judgment motion that the plaintiff was pictured during its

broadcasts concerning the bank robbery at Noon, 6:00 p.m. and 11:00 p.m., entering a police van handcuffed and that plaintiff could be seen both from the side and then head-on. The audio portion of the Noon broadcast describes the person placed into the police van, who is not named, as a "suspect", and states that another suspect had earlier been taken into custody and the money stolen from the bank recovered. The report states that both men will be charged with the robbery but that their names have not been released pending a formal hearing. The six o'clock report briefly recounts the robbery and the chase and states that three men are in custody and two, named as Joseph Wise and Ronald Wilson, have been charged. The addresses of the two men charged are also given. The eleven o'clock report names all three men charged in the robbery, Joseph Wise, Ronald Brown and Ronald Lewis, and adds that no one was hurt in the robbery.

■ Capital Cities asserts that it is entitled to summary judgment because the material facts, concerning which there are no genuine issues, show that its broadcasts were fair and accurate reports of official police action and that the broadcast reports were true. Under Pennsylvania law, the fair and accurate reporting of official action taken by the police is privileged. The existence and breadth of the privilege concerning reports of official or judicial proceedings are matters of law appropriate for summary disposition. *Schuster v. U.S. News and World Report,* 602 F.2d 850, 855 (8th Cir.1979); *See Medico v. Time, Inc.,* 643 F.2d 134 (3d Cir.1981); *Mathis v. Philadelphia Newspapers, Inc.,* 455 F.Supp. 406 (E.D.Pa.1978). Further, summary judgment is appropriate where the record contains no evidence from which a jury might find that a defendant abused the privilege and where there is no genuine issue of material fact as to the substantial accuracy of the report. *Mathis,* 455 F.Supp. at 415; *Porter v. Guam Publications, Inc.* 643 F.2d 615 (9th Cir.1981); *Brueggemeyer v. Associated Press,* 609 F.2d 825 (5th Cir.1980); *Lambert v. Providence Journal Co.,* 508 F.2d 656 (1st Cir.1975), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 45 (1975); *See Simonson v. United Press International,* 654 F.2d 478 (7th Cir.1981); *Anderson v. Stanco Sports Library,* 542 F.2d 638 (4th Cir.1976); *Dostert v. Washington Post Co.,* 531 F.Supp. 165 (N.D.W.Va.1982). *Cf. Marcone v. Penthouse International, Ltd.,* 533 F.Supp. 353, 358–59 (E.D.Pa.1982) (sufficient factual issues raised as to substantial accuracy of report to require that case go to the jury).

■ In the present case there is no evidence of record from which a jury could find that defendants have abused the common-law privilege, recognized in Pennsylvania, to publish a fair and substantially accurate account of plaintiff's arrest. Further, there is no dispute over any of the facts underlying Capital Cities' claim that the broadcast was substantially accurate. Since the undisputed facts show that the broadcast was a substantially accurate account of plaintiff's arrest, summary judgment for defendants is appropriate.

The privilege to make a fair report of an official proceeding or action is set out in § 611 of the *Restatement (Second) of Torts.* While the Supreme Court of Pennsylvania has not yet had occasion to comment on this version of the fair report privilege, Pennsylvania courts follow the *Restatement (Second) of Torts* on most matters, *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 611 n. 25, 327 A.2d 94, 100 n. 25 (1974), and have endorsed the substantially similar formulation of the privilege set forth in the first *Restatement.* It is therefore apparent that the Supreme Court will adopt the formulation of the fair report privilege embodied in the current *Restatement. Medico v. Time, Inc.,* 643 F.2d at 138; *Mathis,* 455 F.Supp. at 415; *See Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53 (1971); *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 191 A.2d 662 (1963); *Sciandra v. Lynett,* 409 Pa. 595, 187 A.2d 586 (1962).

Section 611 provides:

§ 611. Report of Official Proceeding or Public Meeting.

The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

This provision is specifically made applicable to reports of arrests by comment (h).

h. *Arrest.* An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section. . . .

Section 611 establishes a qualified privilege only, not an absolute privilege. The immunity it offers

is forfeited if the publisher steps out of the scope of the privilege or abuses the "occasion". This can be done by exaggerated additions, or embellishments to the account. Furthermore, this qualified privilege is lost if the defamatory material is published solely for the purpose of causing harm to the person defamed.

*Sciandra v. Lynett,* 409 Pa. at 600, 187 A.2d at 589 (citations omitted). The burden of proving abuse of the privilege rests on the plaintiff. 42 Pa.C.S.A. § 8343(a)(7). In addition, "[i]t is the duty of the court to declare as a matter of law that no abuse of the 'occasion of privilege' exists where the evidence adduced leads to but one conclusion." *Sciandra,* 409 Pa. at 606, 187 A.2d at 592 (citations omitted). *See Mathis,* 455 F.Supp. at 417–18.

There is no evidence in the record of this case which raises a genuine issue of material fact concerning any abuse of the privilege and prevents the Court from entering summary judgment on behalf of Capital Cities on the basis of the privilege. There is absolutely no evidence in the record to support a contention that the broadcast was made solely for the purpose of harming the plaintiff. Capital Cities has offered uncontradicted affidavits of its news director and news photographer that their purpose in producing and disseminating the broadcast on Channel 6 was to document accurately a "breaking news story" concerning the robbery, and not to injure the plaintiff. There is no evidence that anyone involved with the Channel 6 broadcast personally knew plaintiff at the time of the broadcast or had any possible reason to cause him harm. Plaintiff has not, therefore, raised any genuine issue of material fact that the material was published solely to harm him.

■ The qualified fair report immunity can also be forfeited if the broadcaster "abuses the occasion" by exaggerated additions or embellishments to the account. Stated another way, the account will not be protected unless it is fair and substantially accurate. *Binder,* 442 Pa. at 327, 275 A.2d at 56; *Sciandra,* 409 Pa. at 600, 187 A.2d at 589; *Kilian v. Doubleday & Co.,* 367 Pa. 117, 79 A.2d 657 (1951); *See Marcone,* 533 F.Supp. at 358; *Hanish v. Westinghouse Broadcasting Co.,* 487 F.Supp. 397, 402 (E.D. Pa.1980). It is not necessary to establish the precise truth of the broadcast statements; if the statement is true in substance inaccuracies of expression or detail are immaterial. *Binder,* 442 Pa. at 324, 275 A.2d at 56; *Restatement (Second) of Torts* § 581A, comment (f); *See Moore v. Credit Information Corp. of America,* 673 F.2d 208, 210 (8th Cir.1982); *Orr v. Argus Press Co.,* 586 F.2d 1108 (6th Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979). A statement is substantially accurate if its "gist" or "sting" is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced. *Alioto v. Cowles Communications, Inc.,* 623 F.2d 616, 619 (9th Cir. 1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981); *Baker v. Burlington Northern, Inc.,* 99 Idaho 688, 587 P.2d 829 (1978); *Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337 (1973); *Picard v. Brennan,* 307 A.2d 833 (Maine 1973); *Fendler v. Phoenix Newspapers,* 130 Ariz. 475, 636 P.2d 1257 (Ariz.App.1981); R. Sack, Libel, Slander and Related Problems 137–38 (1980); W. Prosser, Handbook of the Law of Torts § 116 at 798 (4th ed. 1971). *See Pierce v. Capital Cities Communications,*

*Inc.,* 576 F.2d 495, 504 (3d Cir.1978), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978). As noted above, where there is no dispute as to the underlying facts, the question of whether a statement is substantially accurate is one of law for the Court. The Court should not scrutinize simply the literal references of the language in question, but should weigh the words together with their context. *Pierce,* 576 F.2d at 502; *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 444–46, 273 A.2d 899, 906 (1971), Prosser, § 111 at 748, Restatement (Second) of Torts § 614, comment (a).

In the present case it is not disputed that the Channel 6 broadcasts accurately reported that the PSFS bank was robbed, and that police arriving shortly thereafter took several men into custody in connection with the robbery, recovering the money believed to have been taken. Although the 12:00 Noon broadcast did not give the names of any of the men apprehended, the two later broadcasts did correctly give the names of the men formally charged with the robbery. Plaintiff's name was never mentioned in any of the broadcasts.

It is also not disputed that plaintiff was not involved in the robbery and was released at 4:00 p.m. on the day of the robbery. Defendants' privilege to broadcast the fact of plaintiff's arrest was not lost, however, merely because plaintiff was not, in fact, involved in the bank robbery. Plaintiff cannot, therefore, base his action on any asserted defamatory implication that he was guilty of the bank robbery which may arise out of a substantially accurate report of the arrest. *Lambert v. Providence Journal Co.,* 508 F.2d at 658; *Piracci v. Hearst Corp.,* 263 F.Supp. 511 (D.Md. 1966), *aff'd* 371 F.2d 1016 (4th Cir.1967); *Commercial Publishing Co. v. Smith,* 149 F. 704, 706 (6th Cir.1907); *Fite v. Retail Credit Co.,* 386 F.Supp. 1045, 1046 (D.Mont.1975), *aff'd* 537 F.2d 384 (9th Cir.1976) ("records of indictments, arrests, and arraignments are constantly reported without liability, and this even though any particular case may later be dismissed or a judgment of acquittal entered"); *Cullison v. City of Peoria,* 120 Ariz. 165, 584 P.2d 1156 (1978). *See*

*Mathis,* 455 F.Supp. at 417 (accurate publication of inaccurate arrest reports within § 611 privilege); *Sciandra,* 409 Pa. at 604, 605, 187 A.2d at 531 (same). The privilege remains intact so long as the report does not go beyond the facts of the arrest to comment upon or infer the probable guilt of the accused. *Smith,* 149 F. at 706; *Piracci,* 263 F.Supp. at 514. The privilege is also lost if the report is distorted, highly colored, or made up of matters largely extraneous to the arrest or official proceedings. *Purcell,* 411 Pa. at 177–82, 191 A.2d at 667–70.

The broadcast of Capital Cities on Channel 6 did not in any way go beyond a report of the arrest of the robbery suspects. Since plaintiff's name was not mentioned, clearly no statement was made concerning his probable guilt directly; nor was any statement made implying the probable guilt of any of the suspects named or pictured. At no time were any of those apprehended referred to as bank robbers or criminals. These broadcasts do not in any way show the kind of inaccuracy or abuse of the fair report privilege which has been held to provide the basis for liability under the defamation law of Pennsylvania or other jurisdictions.

The only statement in the Channel 6 broadcasts which might be considered "inaccurate" is the single sentence in the Noon broadcast, "Both men will be charged with the bank robbery" which statement followed a description of the taking of two suspects into custody. Since plaintiff's picture was shown at the time, this statement might be understood as referring to the plaintiff. This statement does not, taken in context, render the broadcast substantially inaccurate. First, the sentence immediately following it states that no formal hearing has yet been held and that the names of the suspects are not to be released until such formal hearing. Further, although the plaintiff was never slated for robbery and formal charges were never brought against him, the viewing of an arrest of a suspect in a bank robbery by its very nature indicates to the viewer that the police had probable cause to make the arrest. This probable

cause includes a belief that a crime was committed and that the person arrested committed it. *United States v. Miles*, 468 F.2d 482, 486–87 (3d Cir.1972). While an arrest may not culminate in a filing of formal charges, a "common definition of arrest" is the "lawful taking of a person into custody in order that he may be forthcoming to answer for the commission of an alleged crime." *Miles v. Commonwealth of Pennsylvania*, 8 Pa.Cmwlth. 544, 549, 304 A.2d 704, 707 (1973). This definition, we believe, comports with the meaning of the word, which the "average persons among whom it is intended to circulate" are likely to attribute it. *Corabi*, 441 Pa. at 447, 273 A.2d at 907. Moreover, it is an "elemental protection" of our system that a citizen is shielded from an arrest "in the absence of a showing he or she has committed or is committing a crime." *Commonwealth v. Harris*, 491 Pa. 402, 407, 421 A.2d 199, 201 (1980). The fact of plaintiff's detention, therefore, implied the existence of some showing implicating plaintiff in the crime. As noted above, the fact that the arrest was in connection with a crime plaintiff did not commit does not render the reporting medium liable for the report. For these reasons, we cannot say that Capital Cities' broadcasts were rendered substantially inaccurate by the inclusion of the above-quoted sentence, which stated that both suspects "will be charged with the bank robbery."

Capital Cities has also asserted that summary judgment should be granted it because its broadcast was substantially true. The Court is aware of the recent decision of Judge Spaeth of the Pennsylvania Superior Court in *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d 6 (Pa.Super.1982), holding that, in light of the Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the plaintiff in a defamation action bears the burden of showing the falsity of the publication giving rise to the action. We join with our colleague, Chief Judge Luongo, in predicting that the Pennsylvania Supreme Court will follow *Dunlap* when it is presented with the issue. *Lal v. CBS, Inc.*, 551 F.Supp. 356 at 361 n. 3 (E.D.Pa.

1982). *See Steaks Unlimited, Inc. v. Deaner*, 632 F.2d at 274–75. Even if the fair report privilege, which we have determined justifies entry of summary judgment for Capital Cities in this case, were determined not to be applicable, plaintiff has not raised an issue of material fact concerning the falsity of the broadcasts in order to meet his burden of proving such falsity. As discussed above, the broadcasts concerning plaintiff's arrest were substantially true. Summary judgment for Capital Cities is thus appropriate on this ground as well as on the ground of the fair report privilege.

For all of the above reasons, the broadcasts of defendant Capital Cities were fair and substantially accurate reports of the plaintiff's arrest, and were thus within the fair report privilege afforded under Pennsylvania law. They were also substantially true. Summary judgment for Capital Cities is, therefore, appropriate.

■ Heeding the admonition that "as a general matter, when a case may be disposed of on non-constitutional grounds, it is appropriate not to reach the constitutional issue," *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d at 504 n. 31, we have not determined these motions on the basis of the constitutional issues raised. However, since important First Amendment values are at stake here, it is appropriate to note that under the undisputed facts presented in this motion both defendants would also be entitled to summary judgment on constitutional grounds on the basis that the broadcasts were protected by the Constitutional right of the press to report matters of public interest soon after their occurrence. *See Pierce*, 576 F.2d at 504–08.

The commission of crime and the resulting prosecution and judicial proceedings are "without question events of legitimate concern to the public and fall within the responsibility of the press to report the operations of government." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328 (1975). The Third Circuit has recognized that Constitutional protection is needed for reports of fresh news developments:

The primary value of these items to the public is in conveying the latest news as promptly as possible so that it has the opportunity to be informed of news items of possible immediate public concern. It is not realistic to require thorough research or verification of each individual item under these conditions. The need for constitutional protection in the circumstances is much more apparent than in the cases of the so-called documentaries or feature stories where time is available to attempt to verify questionable material.

*Rosenbloom v. Metromedia, Inc.,* 415 F.2d 892 (3d Cir.1969), *aff'd on other grounds* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). Another judge in this Circuit has also expressed the need for such protection:

> It is important to remember the time constraints under which defendants were conducting their investigation ... Although this situation does not fit precisely in the "hot news" line of cases, the less than 12 hours in which defendants had to investigate and prepare the newscast dictates a lesser standard of research than would be necessary for documentaries and the like.

*Steaks Unlimited, Inc. v. Deaner,* 468 F.Supp. 779, 785–86 (W.D.Pa.1979), *aff'd* 623 F.2d 264 (3d Cir.1980). *See Dickey v. CBS, Inc.,* 583 F.2d 1221, 1228 n. 9 (3d Cir.1978); *Corabi,* 441 Pa. at 465, 273 A.2d at 916. These considerations also provide a basis for our determination that summary judgment for the defendants is the proper resolution of this case.

An appropriate order will be entered.

### APPENDIX "A"

### TRANSCRIPTS OF BROADCAST REPORTS BY CAPITAL CITIES ON CHANNEL 6, WPVI–TV

#### 12:00 NOON

But the big story on action news this noon is a real life game of cops and robbers in the east falls section of philadelphia.

It happened at conrad and midvale streets.

Police massed to try and find a second suspect in this morning's robbery of the PSFS bank in roxborough.

They methodically searched the area, looking through bushes when suddenly

Only a few moments later police had taken the suspect into custody.

He was loaded into a police van.

Police had earlier taken another suspect into custody.

He was nabbed not far from what police say was the getaway car.

The money stolen from the bank was recovered.

Both men will be charged with the bank robbery.

Their names have not been released pending a formal hearing.

#### 6:00 P.M.

But the big story on action news is a real life game of cops and robbers played out on the streets of philadelphia.

Just minutes after a hold-up of a PSFS branch bank in Roxborough ... police went on the prowl for the bandits.

Right now ... 3 men are in custody ... 2 have already been charged.

32 year old joseph wise of north 16th street and 24 year old ronald brown of the 55 hundred block of hazel street have been charged with robbery and a host of other offenses.

The action cam was rolling as police spotted suspects in east falls.

Police tell action news a 3rd suspect was waiting in the getaway car.

Police recovered and counted money they think was the cash stolen from the bank.

It was a total of 5 thousand dollars.

The arrests were made just 5 minutes after the hit ... quick action by the men of the philadelphia police department.

#### 11:00 P.M.

A bank robbery today in roxbor' ended up with 3 men in jail tonigh'

206

Police went on the prowl just minutes after armed gunmen held up the PSFS branch ... getting away with 5 thousand dollars.

It didn't take long for lawmen to capture 3 suspects ... two on foot ... and the 3rd allegedly staked out in a getaway car.

Charged in the case are joseph wise ... ronald brown and ronald lewis ... all of philadelphia.

Lawmen say they recovered the stolen cash ... all 5 thousand bucks of it.

Nobody was hurt in the hold-up.