J-A05012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD A. LAPINSKI, GEORGE E. FITZGERALD AND MARY JO SIVY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID POLING, INDIVIDUALLY AND IN HIS CAPACITY AS CHAIRMAN OF THE ECONOMY BOROUGH DEMOCRATIC COMMITTEE AND MICHAEL SISK, INDIVIDUALLY AND IN HIS CAPACITY AS CHAIRMAN OF THE BEAVER COUNTY DEMOCRATIC COMMITTEE | : : : : : : : : : | |
| | : | |
| Appellees | : | No. 250 WDA 2016 |

Appeal from the Order January 20, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 10754 of 2014

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED APRIL 07, 2017**

Appellants, Richard A. Lapinski, George E. Fitzgerald, and Mary Jo Sivy, appeal from the order entered in the Beaver County Court of Common Pleas, which sustained the preliminary objections of Appellees, David Poling and Michael Sisk, and dismissed Appellants' complaint. We affirm.

The relevant facts and procedural history of this appeal are as follows. Appellants are residents of Economy Borough in Beaver County, Pennsylvania, and were members of the Bipartisan Committee for a Better Economy Borough ("Committee") until it disbanded in October 2013. The

Committee supported some candidates in the 2013 local municipal elections. During the 2013 elections, Mr. Fitzgerald was a candidate for mayor of Economy Borough, Ms. Sivy was a candidate for tax collector of Economy Borough, and Mr. Lapinski served as treasurer of the Committee. Appellees were also active in local politics. Mr. Poling was the mayor of Economy Borough and chairman of the Economy Borough Democratic Committee, and Mr. Sisk was the chairman of the Beaver County Democratic Committee.

In September 2013, a dispute arose concerning the campaign finance reports of the Committee, Mr. Fitzgerald, and Ms. Sivy. Appellees sent letters dated September 9, 2013, and September 17, 2013 ("Letters"), to three Beaver County entities: the Bureau of Elections; the Board of Elections; and the District Attorney's Office. Appellees sent the Letters on Economy Borough Democratic Committee letterhead and signed the Letters as chairpersons of their respective political committees. In the Letters, Appellees asked for an investigation into the Committee's 30-day post primary campaign finance report, based on the Committee's alleged failure to comply with reporting requirements. The Letters explained that Appellees had documentary proof of the Committee's noncompliance.[1]

In each letter, Appellees referred to several purported facts to support

---

[1] The Letters reference several attachments and detail the content of each attachment, but the attachments are not in the certified record, and they were not appended to Appellants' complaint.

their assertions. In the September 9th letter, Appellees explained Mr. Lapinski had prepared the 30-day post primary campaign finance report on behalf of the Committee. Appellees noted the report disclosed total expenditures in the amount of $978.27. Appellees then listed several observations to indicate the Committee had underreported their total expenditures. First, Appellees explained the Committee sent to voters approximately 11,000 mailers; Appellees estimated the cost of the postage was nearly $4,000.00. Second, Appellees stated the Committee posted at least 17 campaign signs throughout Economy Borough. Appellees represented each sign costs $150.00, based on the amount that appeared in a police report concerning damage to one of the Committee's signs. Appellees concluded, in relevant part, as follows:

> [The Committee] has yet to produce evidence of accuracy and transparency in their campaign finance reports. Clearly, the evidence provided in this complaint…will conclude that [the Committee's] expenditures filed in the 30-day post primary campaign finance report failed to disclose all monies spent in the 2013 primary election in Economy Borough, PA. [We are] urging the [B]oard of [E]lections and the [D]istrict [A]ttorney to take all necessary actions to ensure this [C]ommittee acts according to Pennsylvania election laws. The state provides detailed guidelines on its laws as well as fines and punishment that pertain to fraudulent campaign finance reporting. … It's apparent to [us] that th[e C]ommittee has not disclosed accurate expenditures, in kind contributions, or total contributions.

(*See* Letter dated 9/9/13, attached as Exhibit 1 to Appellants' Complaint; R.R. at 16a.)

- 3 -

Appellees stated in the September 17th letter that Mr. Fitzgerald and Ms. Sivy failed to file 30-day post primary campaign reports. Appellees explained each candidate sent out to voters during the 2013 campaign over 5,500 mailers. Appellees added that these mailers bore the same identification numbers which appeared on the Committee's 2013 campaign materials. The September 17th letter concluded, in relevant part, as follows:

> [We] strongly believe[] that…[Mr.] Fitzgerald['s] and [Ms.] Sivy['s] campaign materials were funded by the [Committee]. However, both candidates failed to report their campaign expenditures to the Beaver County Bureau of Elections…. … The state's election laws clearly caution candidates about failure to produce and report all campaign finances that exceed $250.00…which include fines, and criminal charges for fraudulent campaign financing. [We are] asking our elected county officials to order a[n] investigation into [Mr.] Fitzgerald and [Ms.] Sivy for failure to comply with the Pennsylvania election laws. These candidates clearly with the evidence provided…are in violation of the Pennsylvania Finance Reporting Laws section 1638.

(*See* Letter dated 9/17/13, attached as Exhibit 2 to Appellants' Complaint; R.R. at 17a.)

The Bureau of Elections referred Appellees' complaints to the District Attorney's Office, which transferred the complaints to the Attorney General's Office, due to a conflict. After it conducted an investigation, the Attorney General's Office did not file criminal charges against Appellants and the Committee for violation of campaign finance laws. In their defamation/false light complaint, Appellants alleged the Attorney General's Office issued a letter to the Beaver County District Attorney explaining why it declined to

prosecute Appellants for the alleged campaign finance violations set forth in the Letters. (Appellants' Complaint, filed 9/10/14, at ¶¶ 39-40). The Attorney General's Office letter does not appear in the certified record. During the 2013 election, John Paul Vranesevich reported Beaver County news on a website he maintained. In September and October 2013, Mr. Vranesevich wrote and published on the website three articles that discussed the allegations in the Letters. Mr. Vranesevich's articles also summarized and quoted the Letters.

On May 15, 2014, Appellants commenced this defamation/false light action against Appellees and Mr. Vranesevich by writ of summons. Appellants filed a complaint against Appellees and Mr. Vranesevich for defamation and false light on September 10, 2014. Appellants included the following averments in their complaint:

> 11. [Appellants] are longtime residents of Economy Borough, Beaver County, who are active in the community and in local politics.
>
> * * *
>
> 13. Fitzgerald was a candidate for mayor of Economy Borough in the 2013 municipal elections.
>
> 14. Sivy was a candidate for tax collector of Economy Borough in the 2013 municipal elections.
>
> 15. [Appellants] were members of the [Committee] until it disbanded in or about October 2013.
>
> 16. At all relevant times, Lapisnki served as treasurer of the Committee.

\*    \*    \*

18.    In or about September 2013, [Appellees] drafted, signed and circulated letters to the Beaver County Bureau of Elections, the Beaver County Board of Commissioners – Board of Elections, the Beaver County District Attorney's Office and perhaps other individuals….

19.    In their [L]etters, [Appellees] called for the county to launch criminal investigations of [Appellants] and the Committee for not reporting certain campaign expenses in violation of campaign finance reporting laws set forth in the Pennsylvania Election Code, 25 P.S. § 3241, *et seq.*….

\*    \*    \*

23.    For their [L]etters, [Appellees] used the official letterhead of the Beaver County Democratic Committee without the consent or authorization of the committee.

24.    [Appellees] identified [Appellants] by name in their [L]etters.

25.    [Appellees] falsely asserted in their September 9 letter that a 30-Day Post-Primary campaign expenditure report, which was prepared by Lapinski and submitted to the Beaver County Bureau of Elections on June 20, 2013, violated the Pennsylvania campaign finance reporting laws.

26.    Among other things, [Appellees] falsely claimed in their September 9 letter that:

a.    The expenditures reported by Lapinski in the Report are false and that Lapinski "failed to disclose all monies spent in the 2013 primary election in Economy Borough, PA."

b.    The Committee "has yet to produce evidence of accuracy and transparency in their campaign finance reports."

c.    Lapinski and the Committee engaged in "fraudulent campaign finance reporting."

    d.    "Th[e C]ommittee has not disclosed accurate expenditures, in kind contributions, or total contributions."

27.    [Appellees] also erroneously reported the number of campaign flyers that the Committee mailed to voters and the number of campaign signs that the Committee purchased.

28.    In addition to their campaign against Lapinski and the Committee, [Appellees] attacked Fitzgerald and Sivy in their September 9 letter and in their September 17 letter.

29.    [Appellees] erroneously claimed that Fitzgerald and Sivy broke the law by failing to file 30-Day Post-Primary campaign expenditure reports with the Beaver County Bureau of Elections.

30.    [Appellees] wrote that "both candidates failed to report their campaign expenditures to the Beaver County Bureau of Elections which would have listed all in kind contributions that were labor donated to both campaigns," and [Appellees] called on "elected county officials to order an investigation into candidates George E. Fitzgerald and Mary Jo Sivy for failure to comply with the Pennsylvania election laws."

31.    Upon information and belief, [Appellees] slandered and smeared [Appellants] by making similar accusations concerning alleged campaign finance reporting violations to others in Economy Borough and Beaver County.

\*    \*    \*

42.    Lapinski and the Committee submitted all required reports during the 2013 election cycle and did so in a timely manner.

43.    Likewise, Sivy properly submitted the required 30-Day Post-Primary report for 2013, and Fitzgerald was not required to file said report because his personal expenses did not exceed $250.00.

- 7 -

* * *

## COUNT I – DEFAMATION

* * *

57.    Each of the statements made by [Appellees] was false.

58.    [Appellees] knew that such statements were false, and/or acted in reckless disregard of their truth or falsity.

59.    [Appellees] had no privilege to make such statements.

(Appellants' Complaint, filed 9/10/14, at ¶¶ 11, 13-16, 18-19, 23-31, 42-43, 57-59; R.R. at 5a-12a) (internal citations to exhibits omitted). Appellants appended to their complaint as exhibits copies of the Letters at issue, without the attachments to the Letters.

On September 30, 2014, Mr. Vranesevich filed preliminary objections in the nature of a demurrer.[2] Mr. Poling filed preliminary objections in the nature of a demurrer to Appellants' complaint on October 27, 2014. On October 31, 2014, Mr. Sisk also filed preliminary objections in the nature of a demurrer. In their preliminary objections, Appellees asked the court to dismiss the complaint because, *inter alia*, Appellants are public figures and

_____

[2] The trial court sustained Mr. Vranesevich's preliminary objections and dismissed Appellants' complaint against him on April 1, 2015. Appellants did not challenge the court's April 1, 2015 order, and Mr. Vranesevich is not a party to this appeal.

they failed to plead that Appellees had made the allegedly defamatory statements with actual malice. For the same reason, Mr. Sisk also asked the court to dismiss Appellants' false light claim.

On September 24, 2015, Mr. Poling filed a brief in support of his preliminary objections. In his brief, Mr. Poling posited the Letters are incapable of a defamatory meaning. The court conducted a hearing on Appellees' preliminary objections on September 28, 2015. At the hearing, Ms. Sivy joined Mr. Poling's position on lack of defamatory meaning. The court sustained Appellees' preliminary objections and dismissed Appellants' complaint on January 20, 2016. Appellants timely filed a notice of appeal on February 16, 2016. On February 23, 2016, the court ordered Appellants to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellants timely complied on March 15, 2016.

Appellants raise three issues for our review:

> WHETHER THE TRIAL COURT ERRED IN SUSTAINING APPELLEES' PRELIMINARY OBJECTIONS IN THE NATURE OF A DEMURRER AND CONCLUDING THAT LETTERS PREPARED AND CIRCULATED BY [APPELLEES] ARE NOT CAPABLE OF DEFAMATORY MEANING AND ARE NOT HIGHLY OFFENSIVE TO A REASONABLE PERSON[?]

> WHETHER THE TRIAL COURT ERRED IN FINDING THAT APPELLEES HAD PROPERLY AND TIMELY ARGUED THAT APPELLANTS HAD NOT SHOWN THAT THE STATEMENTS IN QUESTION ARE CAPABLE OF DEFAMATORY MEANING WHEN, IN FACT, APPELLEES FAILED TO RAISE SUCH ARGUMENTS IN THEIR PRELIMINARY OBJECTIONS[?]

> WHETHER THE TRIAL COURT ERRED IN SUSTAINING APPELLEES' PRELIMINARY OBJECTIONS IN THE NATURE

OF A DEMURRER AND CONCLUDING THAT APPELLEES PREPARED AND SUBMITTED THEIR LETTERS IN THEIR CAPACITIES AS CHAIRMEN OF TWO DEMOCRATIC COMMITTEES, NOTWITHSTANDING APPELLANTS' AVERMENTS THAT APPELLEES ACTED INDIVIDUALLY IN PART AND USED OFFICIAL LETTERHEAD WITHOUT CONSENT OR AUTHORIZATION[?]

(Appellants' Brief at 3-4).

In their first issue, Appellants argue Appellees accused Appellants in the Letters of criminal acts in violation of Pennsylvania campaign finance laws. Appellants assert these criminal allegations are capable of a defamatory meaning as libel *per se* and are highly offensive to a reasonable person. Appellants also claim the Letters baldly stated Appellants violated political campaign advertising laws and implied the existence of undisclosed defamatory facts. Appellants maintain the Letters did not reference the nature of the alleged violations or include citations to specific provisions of the Pennsylvania Election Code. Appellants note the record does not include the attachments to Appellees' Letters. Appellants posit they should be allowed to conduct discovery to determine whether: (1) the proposed attachments support Appellees' claims; and (2) the Beaver County officials who received the Letters would have considered Appellants disparaged after reading the Letters.

In their second issue, Appellants argue Appellees waived their position that the statements in the Letters are incapable of a defamatory meaning, because Appellees failed to raise that contention in their preliminary

objections. Appellants aver Mr. Poling first challenged the defamatory meaning of the Letters in his brief in support of his preliminary objections and again during the hearing on the preliminary objections. Appellants represent Mr. Sisk joined Mr. Poling's argument at the hearing but did not otherwise argue the Letters are incapable of a defamatory meaning.

In their third issue, Appellants argue Appellees did not author the Letters in their respective capacities as chairpersons of political committees. Appellants claim Appellees had no authorization to write the Letters on the official letterhead of the Beaver County Democratic Committee. Appellants conclude this Court should vacate the trial court's order that sustained Appellees' preliminary objections and dismissed Appellants' complaint. We disagree.

The relevant scope and standard of review in examining a challenge to an order sustaining preliminary objections in the nature of a demurrer are as follows:

> Our review of a trial court's sustaining of preliminary objections in the nature of a demurrer is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.
>
> All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether, on

the **facts** averred, the law says with certainty that no recovery is possible.  Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Regarding a demurrer, this Court has held:

A demurrer is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted.  A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences.  In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.

Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Lerner v. Lerner*, 954 A.2d 1229, 1234-35 (Pa.Super. 2008) (emphasis in original) (internal citations omitted).  Also, when analyzing a demurrer, the court "need not consider the pleader's conclusions of law, unwarranted inferences from facts, opinions, or argumentative allegations."  *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 619 (Pa.Super. 1999), *appeal denied*, 561 Pa. 700, 751 A.2d 193 (2000) (internal citations omitted).  To determine if the trial court properly sustained preliminary objections, this Court examines the averments in the complaint and the documents attached to the complaint to evaluate the adequacy of the facts averred and to assess the legal sufficiency of the complaint.  *Clemleddy Constr., Inc. v. Yorston*, 810 A.2d 693, 696 (Pa.Super. 2002), *appeal denied*, 573 Pa. 682, 823 A.2d 143 (2003).

The Uniform Single Publication Act outlines the basics of a defamation action. *See* 42 Pa.C.S.A. §§ 8341-8345. Section 8343 provides:

**§ 8343. Burden of Proof**

**(a) Burden of plaintiff.—**In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343(a). A communication is defamatory if it "tends…to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 615, 848 A.2d 113, 124 (2004). "It is not enough that the victim…be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Id.*

"Libel is the malicious publication of printed or written matter which tends to blacken a person's reputation and expose him to public hatred,

contempt or ridicule." *Id.* *See also Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 469 (Pa.Super. 1984) (defining libel as "a method of defamation expressed by print, writing, pictures, or signs"). A publication is also defamatory if it tends to injure the subject of the publication in his business or profession. *Id.* at 461. Statements which impute the commission of a crime are capable of a defamatory meaning as a matter of law.[3] *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072, 1078 (3d Cir. 1985), *certiorari denied*, 474 U.S. 1014, 106 S.Ct. 182, 88 L.Ed.2d 477 (1985) (citing *Baird v. Dun & Bradstreet*, 446 Pa. 266, 285 A.2d 166 (1971) and *Agriss, supra*). The Restatement (Second) of Torts § 571 provides: "One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution…." Restatement (Second) of Torts § 571. *See also Agriss, supra* at 473 (noting Pennsylvania generally tends to adopt Restatement rule in defamation).

> It is not necessary th[at] the charge be made in technical
> language. It is enough that the language used impute to

---

[3] The Pennsylvania Election Code, 25 P.S. § 2600, *et seq.* ("Election Code"), sets forth political campaign finance reporting and advertising requirements. 25 P.S. §§ 3246, 3258. A violation of the Election Code is a misdemeanor, the sentence for which is either a fine or imprisonment, at the court's discretion. 25 P.S. §§ 3545, 3550.

the other the criminal offense. … It is not necessary that the defamer charge any particular criminal offense by name or description, if the words used imply some crime…. Neither is it necessary that the defamer directly charge the other with the criminal offense or that the charge be made as of the speaker's own knowledge or belief.

Restatement (Second) of Torts § 571, *Comment C*.

Importantly, public-figure plaintiffs must plead additional elements to state a cause of action for defamation. ***Coleman v. Ogden Newspapers, Inc.***, 142 A.3d 898, 905 (Pa.Super. 2016). Individuals who are "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large" are public figures. ***Milkovich v. Lorain Journal Co.,*** 497 U.S. 1, 14, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (quoting ***Gertz v. Robert Welch, Inc.***, 418 U.S. 323, 337, 94 S.Ct. 2997, 3005, 41 L.Ed.2d 789 (1974)) (internal quotations omitted). Generally, candidates for office are public figures. ***Id.*** at 344, 94 S.Ct. at 3009, 41 L.Ed.2d at ____ (stating: "An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case").

All public figures must establish the alleged defamatory statement was false and the defendant made the statement with actual malice. ***American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania***, 592 Pa. 66, 91-92, 923 A.2d 389, 404 (2007), *certiorari denied*, 552 U.S. 1076, 128 S.Ct. 806, 169 L.Ed.2d 606 (2007); ***Tucker,***

*supra*, at 624-25, 848 A.2d at 129-30. Actual malice exists where a defendant makes a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 624, 848 A.2d at 129 (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964)). "The requirement that the plaintiff be able to show actual malice by clear and convincing evidence is initially a matter of law." *Tucker, supra* at 626, 848 A.2d at 130 (citing *Milkovich, supra*).

> The meaning of terms such as actual malice—and, more particularly, reckless disregard—…is not readily captured in one infallible definition. Rather, only through the course of case-by-case adjudication can we give content to those otherwise elusive constitutional standards. … Most fundamentally, …**"[j]udges as expositors of the Constitution," have a duty to "independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convicting proof of 'actual malice.'"**

*Tucker, supra* at 626, 848 A.2d at 131 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686, 109 S.Ct. 2678, 2695, 105 L.Ed.2d 562 (1989)) (emphasis in original).

To survive preliminary objections in the nature of a demurrer, a plaintiff must plead sufficient allegations of actual malice. *Tucker, supra* at 635, 848 A.2d at 136. The plaintiff must plead the defendant had unequivocal notice that the statement was false. *Id.* at 630-32, 848 A.2d at 133-36. Additionally, the plaintiff must also plead the defendant knew the

- 16 -

statement was false or made the statement with reckless disregard to its falsity. *Id.* at 624, 848 A.2d at 129. "A showing of a reckless disregard for the truth…requires more than a departure from reasonably prudent conduct. Failure to check sources, or negligence alone, is simply insufficient to maintain a cause of action for defamation." *Id.* at 634, 848 A.2d at 135 (quoting *Harte-Hanks, supra* at 688, 109 S.Ct. at 2696, 105 L.Ed.2d at ___) (internal quotations omitted).

> The [United States] Supreme Court has emphasized that the question of whether a statement has been published with reckless disregard of falsity is not measured by whether a reasonably prudent [person] would have [published], or would have investigated before publishing. Rather, [t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication. Thus, while recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports, it simply cannot be concluded that a defendant entertained the requisite doubt as to the veracity of the challenged publication where the publication was based on information a defendant could reasonably believe to be accurate.

*Tucker, supra* at 634, 848 A.2d at 135-36 (quoting *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 179-80, 439 A.2d 652, 660 (1981)).

Under Pennsylvania law, invasion of privacy includes several torts, one of which is publicity that unreasonably places another in a false light before the public, or simply, false light. *Burger v. Blair Medical Associates, Inc.*, 600 Pa. 194, 964 A.2d 374 (2009) (citing Restatement (Second) of

Torts §§ 652B-E).  The Restatement sets forth the elements of false light as follows:

### § 652E.  Publicity Placing Person In False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a)    the false light in which the other was placed would be highly offensive to a reasonable person, and

(b)    the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E.   Under this section, "publicity" means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Id.* at § 652E, *Comment A*; **Burger, supra** at 204-204, 964 A.2d at 379-80 (noting publicity element requires that matter is made public to so many people that matter is substantially certain to become one of public knowledge).  "Thus, it is not an invasion of the right of privacy…to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."  Restatement (Second) of Torts § 652E, *Comment A*.  The plaintiff must also establish the publicity given to him is such that a reasonable person would feel seriously aggrieved by it.  *Id.* at § 652E, *Comment C*. Furthermore, under Section 652E, the publication must be false.  *Id.* at §

652E, *Comment A*. The publication must also be a major misrepresentation of a person's character, history, activities, or beliefs which could cause a reasonable person to take serious offense. *Id.* at § 652E, *Comment C*.

Instantly, Appellants' defamation and false light claims stem from two letters Appellees sent to the Beaver County Board of Elections, Bureau of Elections, and District Attorney's Office. Appellants attached the Letters to their complaint as exhibits. In the September 9th letter, Appellees alleged the Committee failed to comply with statutory campaign contribution reporting requirements and requested an investigation into the Committee's 2013 campaign financing. In the September 17th letter, Appellees explained Mr. Fitzgerald and Ms. Sivy were candidates for office during the 2013 municipal election. Appellees stated the candidates' campaign materials had the same identification numbers as those the Committee deployed. Appellees indicated Mr. Fitzgerald and Ms. Sivy did not file campaign finance reports. In the letter, Appellees concluded the candidates violated statutory campaign finance reporting requirements.

As to whether the Letters are incapable of a defamatory meaning, the trial court reasoned as follows:

> [Appellees] only sent letters including the statements in question to the [Beaver County] Board of Elections, the Beaver County Bureau of Elections, and the Beaver County District Attorney. The [L]etters served as formal complaints expressing concern that [Appellants] had potentially failed to disclose necessary campaign finance expenditures.

*　　*　　*

[Appellees]…expressed their concerns to the proper body for investigating such concerns. … [Appellees] did not publish these statements widely, but, instead, sent them to the officials charged with investigating these types of claims. The audience hearing the remarks was apprised of possible election code violations, and urged to look into the allegations.

Moreover, the statements were not bold assertions of [Appellants] breaking the law, but arguments that could lead to such a conclusion. For example, [Appellants] allege that [Appellees] stated [Appellants] "failed to disclose all monies spent in the 2013 primary election in Economy Borough." The full sentence of the letter actually states, "Clearly, the evidence provided in this complaint…will conclude [the Committee's] expenditures filed in the 30-day post primary campaign finance report failed to disclose all monies spent in the 2013 primary election in Economy Borough, PA." Read in full, the statement is not an accusation, but a conclusion to be reached in light of the supporting evidence provided.

Also, [Appellees] filed the [Letters] in their capacities as [c]hairmen of two Democratic [c]ommittees, stating they believed it was apparent to them that [the] Committee "has not disclosed accurate expenditures, in kind contributions or total contributions." This was their opinion.

Finally, with respect to the allegation that [Mr. Fitzgerald and Ms. Sivy] "broke the law," it is true that if they failed to file campaign finance reports, then they would be in violation of campaign finance reporting laws. With respect to this allegation, [Appellees]…ask[ed] the appropriate officials to investigate the matter. This complaint is separate from allegations against the [Committee].

When the statements [Appellants] complain about are considered in their full context, [the court] believe[s] the statements are not capable of a defamatory meaning. As a matter of law, the [c]ourt will sustain [Appellees'] preliminary objections and dismiss [Appellants']

defamation claim against them.

(Trial Court Opinion, filed January 20, 2016, at 4-7) (internal citations omitted).  Regarding Appellants' false light claim, the trial court said:

> To determine the offensive nature of the statement in question in the instant case, we must again consider the context in which they were made.  The statements were made in [letters] to the individuals responsible for investigating such complaints.  When read in their entirety, the statements contained the opinions of [Appellees] and the [L]etters included documentation and evidence to support those opinions.  Accordingly, considering their entire context, we find that these statements are not highly offensive to a reasonable person.

(*Id.* at 8).  We respectfully disagree with the court's conclusion here.

In the Letters, Appellees requested that authorities investigate Appellants' purported failure to comply with the Election Code, the violation of which is a misdemeanor punishable by fine or imprisonment.  *See* 25 P.S. §§ 3545, 3550, *supra*.  Appellees imputed criminal activity to Appellants. *See* Restatement (Second) of Torts § 571, *Comment C*, *supra*.  To the extent Appellees implied or expressed that Appellants engaged in criminal activity, Appellees' statements are capable of a defamatory meaning.[4]  *See Marcone, supra* (stating statements which impute commission of crime are capable of defamatory meaning as matter of law).  Accordingly, the trial

_____

[4] Our decision that the statements in the Letters are capable of a defamatory meaning renders moot Appellants' second issue concerning the preservation of Appellees' position that their statements are incapable of a defamatory meaning.

court erred when it determined the Letters are not capable of a defamatory meaning, as a matter of law.

Nevertheless, Appellants' pleadings expressly demonstrate they are public figures. Appellants alleged they were active in their community and local politics and were members of the Committee until October 2013. (*See* Appellants' Complaint at ¶¶ 11, 15.) Appellants also pled that during the 2013 municipal elections, Mr. Fitzgerald was a candidate for mayor of Economy Borough, Ms. Sivy was a candidate for tax collector of Economy Borough, and Mr. Lapinski served as treasurer of the Committee. (*See id.* at ¶¶ 13, 14, 16.) Through their activity in the community and participation in politics, Appellants were public figures. *See Milkovich, supra*; *Gertz, supra*. As public figures, Appellants were required to establish in their complaint facts which demonstrate Appellees' statements were false and made with actual malice. *See Tucker, supra*.

In their complaint, Appellants baldly averred Appellees' statements were false. (*See* Appellants' Complaint at ¶ 57.) Appellants similarly concluded Appellees made the statements knowing they were false or with reckless disregard to their falsity. (*See id.* at ¶ 58.) Appellants, however, failed to plead any facts to support either assertion. Appellants also failed to plead and attach relevant documents to show Appellees unequivocally were on notice that their statements were false or made with reckless disregard for their falsity. *See Tucker, supra*. Therefore, Appellants failed to plead

the elements of falsity and actual malice. *See id.*; *Lerner, supra*; *Clemleddy, supra*. Likewise, Appellants were required to plead adequate facts concerning Appellees' alleged abuse of a conditional privilege. *See* 42 Pa.C.S.A. § 8343(a)(7), *supra*. Appellants' single conclusory averment that Appellees did not have privilege to make their statements is inadequate. (*See* Appellants' Complaint at ¶ 59.) *See also Lerner, supra*. Accordingly, Appellants' defamation claim was legally insufficient.

Regarding Appellants' false light claim, Appellants alleged in their complaint that Appellees sent the Letters to three Beaver County entities: the Board of Elections; Bureau of Elections; and District Attorney's Office. Appellants averred Appellees told other unnamed individuals in Economy Borough and Beaver County about Appellees' accusations. Appellants also alleged Mr. Vranesevich published on his website several articles about Appellees' letters. Appellants, however, failed to plead Appellees were responsible for the Internet commentary on Appellees' letters. Appellants' allegation that Appellees told "others" does not make out the widespread publicity necessary to support a false light claim. (*See* Appellants' Complaint at ¶¶ 18, 31.) Appellants failed to plead that Appellees disseminated their statements to the public at large to make the statements a matter of general knowledge. *See Burger, supra*; Restatement (Second) of Torts § 652E*, Comment A*, *supra*. Thus, Appellants' claim for false light against Appellees was legally insufficient as well.

Regarding Appellants' third issue on Appellees' use of official letterhead of the Beaver County Democratic Committee, the trial court reasoned as follows:

> The letters in question were sent on official letterhead and signed by [Appellees] in their capacity as chairmen of these respective committees. Although it was alleged that the letters were sent without consent or authorization…[Appellants] never alleged that [Appellees] needed consent or authorization from [the Beaver County Democratic Committee] before sending letters. …

(Trial Court Opinion, filed May 11, 2016, at 4) (internal citation to record omitted). The record supports the trial court's rationale. Appellants failed to plead in their complaint or argue on appeal that consent or authorization was required by law. Moreover, even if Appellees sent the Letters in an official or individual capacity, the outcome of this case remains unchanged. Therefore, Appellants' third issue merits no relief. Accordingly, we affirm the trial court's order sustaining Appellees' preliminary objections and dismissing Appellants' defamation/false light complaint with prejudice. *See Divine v. Hutt*, 863 A.2d 1160, 1170 (Pa.Super. 2004) (stating where trial court has reached correct result, this Court may affirm its decision on alternative basis).

Order affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Moulton concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2017