**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| IN RE: THE THIRTIETH COUNTY INVESTIGATING GRAND JURY | : | No. 15 EM 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Philadelphia County Court of |
| | : | Common Pleas, Trial Division, dated |
| | : | March 4, 2022 at Misc. No. |
| | : | 0008094-2018 |
| | : | |
| | : | ARGUED: March 6, 2024 |

**OPINION**

**JUSTICE MUNDY**                                    **DECIDED: October 24, 2024**

Petitioner filed a Petition for Specialized Review challenging the public release of an investigating grand jury report of the 30th County Investigating Grand Jury (the "Report"), asserting, *inter alia*, that the supervising judge erred in ordering the Report's public release because the Report does not satisfy the Investigatory Grand Jury Act's ("IGJA")[1] statutory definition of an "investigatory grand jury report." We conclude Petitioner's assertion is correct and, therefore, vacate the supervising judge's order and remand with instructions to permanently seal the Report. In addition to the issues raised by Petitioner, this Court exercised our extraordinary jurisdiction to determine what degree of criticism of a named unindicted individual in an investigatory grand jury report warrants notice and an opportunity to be heard under Section 4552(e) of the IGJA, 42 Pa.C.S. § 4552(e), and whether the supervising judge's decision here to grant such notice and

---

[1] Act of Oct. 5, 1980, P.L. 142, § 216(a)(2) (as amended), 42 Pa.C.S. §§ 4541 – 4553.

opportunity to some, but not all, named, unindicted individuals comported with principles of due process and the fundamental right to reputation under Article I, Section 1 of the Pennsylvania Constitution.[2]   After careful consideration, we determine that due to the fundamental nature of the right to reputation, due process requires notice and opportunity to respond under Section 4552(e) must be granted to any named, unindicted individual criticized in an investigatory grand jury report.

## I.      Background

Neither the substance of the grand jury proceedings nor the contents of the Report have been made public and, given our decision to grant the Petition for Specialized Review and direct that the Report remain sealed, they shall remain undisclosed.  As such, and in accordance with our prior precedent in such instances, *see In re Grand Jury Investigation No. 18*, 224 A.3d 326, 328 (Pa. 2020), we summarize this matter in general terms that are consistent with those facts that are already publicly available through the participants' redacted filings and court orders.[3]

The underlying facts of this case involve the circumstances surrounding a suspect's death shortly after arrest and law enforcement's subsequent investigation.  The Philadelphia District Attorney's Office ("DAO") originally submitted the matter to the 28th County Investigating Grand Jury in 2016.  That grand jury, however, expired prior to concluding its investigation into the matter.  The DAO subsequently submitted the matter

---

[2] Art. I, § 1.  Inherent rights of mankind

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, or acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA CONST. art. I, § 1.

[3] The Court has access to the participants' unredacted briefs, the unredacted Report and the grand jury materials.

to the 30th County Investigating Grand Jury, which received additional evidence and ultimately submitted the Report to the grand jury's supervising judge, the Honorable Kai N. Scott. The supervising judge determined the Report was within the authority of the grand jury and, accordingly, accepted the Report.

After accepting the Report, the supervising judge gave notice and an opportunity to respond to some, but not all, nonindicted individuals who are named in the Report. Petitioner, who is named in the Report but was not indicted, along with several other similarly situated individuals, filed a response seeking the Report be permanently sealed or in the alternative requesting specific redactions. After multiple hearings, the supervising judge made some, but not all, of the requested redactions and, thereafter, ordered that the Report be unsealed as of March 14, 2022. The supervising judge did not issue an opinion in support of her decision to unseal the Report. Prior to the Report's unsealing, Petitioner filed the current Petition for Specialized Review and an Application for Stay pursuant to Pa.R.A.P. 1611.[4] In his Petition for Specialized Review, Petitioner raised the following issues:

1. Did the supervising judge err by ordering the public release of the investigating grand jury [R]eport of the Thirtieth County Investigating Grand Jury because the Report does not meet the statutory definition of an investigating grand jury report as that term is defined pursuant to 42 Pa.C.S. § 4542?

---

[4] Rule 1611. Review of Special Prosecution Orders

**(a) General rule.** – Within ten days after the entry of the order sought to be reviewed, a petition for specialized review may be filed in the Supreme Court of Pennsylvania seeking review of the following orders:

(2) An order relating to the convening or discharge of an investigating grand jury or otherwise affecting its existence.

Pa.R.A.P. 1611(2). *See also* 42 Pa.C.S. § 722(5) (granting this Court exclusive jurisdiction of appeals from final orders that directly affect a grand jury or any investigation conducted by it).

2. Did the supervising judge err in concluding that the findings in the [R]eport were supported by a preponderance of the evidence …?

3. Does the publication of the [R]eport violate [Petitioner's] constitutional right to protection of his reputation where the [R]eport contains conclusions that are unsupported by the preponderance of the evidence and where the redactions fail to meaningfully protect [Petitioner's] identity?

The Court stayed the supervising judge's order unsealing the Report pending our adjudication of the Petition for Specialized Review and related ancillary filings.

On February 10, 2023, the Court ordered that the matter shall be determined following full briefing and oral argument. In addition, the Court exercised extraordinary jurisdiction, *see* 42 Pa.C.S. § 726 (setting forth standard for the Court's extraordinary jurisdiction), and directed the parties to address the following additional question:

What type or degree of criticism of a named but nonindicted individual in a grand jury report warrants notice and an opportunity to be heard under 42 Pa.C.S. § 4552(e), and did the supervising judge's discretionary decision to provide notice and an opportunity to be heard to some, though not all, named but nonindicted individuals in the grand jury's report comport with principles of due process and the fundamental right to reputation under Article I, Section 1 of the Pennsylvania Constitution, as interpreted by *In re Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560 (Pa. 2018)?

We also invited the Office of the Attorney General ("OAG") to participate in this matter and directed that if the OAG accepted that invitation, counsel for the OAG shall take a secrecy oath, as given by the supervising judge.[5] The OAG accepted the Court's invitation and counsel for the OAG was sworn into the grand jury and was provided the unredacted material relative to the Report. The OAG, along with the parties, has fully participated in briefing and oral argument.

## II. Discussion

---

[5] As Judge Scott was no longer available, we also directed the President Judge of the First Judicial District to reassign the matter to the supervising judge of any successor grand jury.

The IGJA provides for both county and multicounty investigating grand juries. *See* 42 Pa.C.S. §§ 4543; 4544. In order to convene county investigating grand juries, such as the grand jury that issued the Report, attorneys for the Commonwealth, such as the DAO, are required to apply to the president judge of the appropriate court of common pleas for an order directing that a county grand jury be summoned "because of the existence of criminal activity within the county which can best be fully investigated using the investigative resource of the grand jury." 42 Pa.C.S. §§ 4543(b). The IGJA further authorizes investigatory grand juries to, *inter alia*, "submit to the supervising judge an investigating grand jury report." 42 Pa.C.S. § 4552(a). A supervising judge who receives an investigatory grand jury report must examine the report and the record of the grand jury and, except in certain limited circumstances, issue an order accepting and filing such report as a public record with the court of common pleas "only if the report is based upon facts received in the course of an investigation authorized by this chapter and is supported by the preponderance of the evidence." 42 Pa.C.S. § 4552(b). The attorney for the Commonwealth may appeal a supervising judge's failure to accept and file an investigatory grand jury report as a public record directly to this Court. 42 Pa.C.S. § 4552(d).

An "investigatory grand jury report" is defined by the IGJA as "[a] report submitted by the investigating grand jury to the supervising judge regarding conditions relating to organized crime or public corruption or both; or proposing recommendations for legislative, executive, or administrative action in the public interest based upon stated findings." 42 Pa.C.S. § 4542 (Definitions). Stated another way, for a report to qualify as an investigatory grand jury report under the IGJA, the report must either (1) relate to organized crime, public corruption, or both or (2) propose recommendations for legislative, executive, or administrative action in the public interest. The IGJA further

defines "public corruption" as, in relevant part, "[t]he unlawful activity under color of or in connection with any public office or employment of … any public official or public employee, or the agent of any public official or public employee under color of or in connection with any public office or employment[.]" *Id.* None of the participants argue the Report relates to "organized crime" as defined by the IGJA.

In addition, if a supervising judge concludes that a report is critical of a named individual who is ultimately not indicted for any criminal offenses, then the supervising judge has the discretion to allow that named individual to submit a response to the allegations against that nonindicted individual contained in the report. 42 Pa.C.S. § 4552(e).[6] If the named, nonindicted individual chooses to submit a response, then the supervising judge has the discretion to attach that response to the report prior to the report being made public. *Id.*

### A. Petition for Specialized Review

In the first issue of the Petition for Specialized Review, Petitioner argues the Report does not satisfy either part of the IGJA's definition of an "investigatory grand jury report." As to the first prong of the definition, Petitioner asserts that the Report does not involve "public corruption" as defined by the IGJA because the definition requires public employees to have engaged in unlawful activity under the color of law, and he asserts the law enforcement officers subject to the Report were required to perform their

---

[6] **§ 4552. Investigating grand jury reports**

**(e) Authorization of response by nonindicted subject.** –If the supervising judge finds that the report is critical of an individual not indicted for a criminal offense the supervising judge may in his sole discretion allow the named individual to submit a response to the allegations contained in the report. The supervising judge may then in his discretion allow the response to be attached to the report as part of the report before the report is made part of the public record pursuant to subsection (b).

42 Pa.C.S. § 4552(e).

investigation, thus, their actions were lawful. According to Petitioner, the Report therefore does not relate to "public corruption" as defined in any way.

As to the second prong of the IGJA's definition, Petitioner acknowledges that the Report makes some public policy suggestions. He contends, however, that those public policy suggestions are clearly not the stated or actual purpose of the Report. Rather, Petitioner argues the Report's unequivocal purpose is to apportion blame and provide answers for the deceased-accused's family. Petitioner asserts that the vast majority of the Report is an unnecessary, *ultra vires* attack on the individuals named in the Report. In support of this position, Petitioner cites to the structure and length of the Report combined with the paucity of space afforded to the so-called recommendations. Citing this Court's decision in *Investigation No. 18*, Petitioner contends that context is important in determining whether a grand jury report satisfies the IGJA's statutory definition. According to Petitioner, "[if] the purpose of an investigation is to attain justice for a specific individual or group of individuals because a criminal prosecution is not possible, a grand jury's report will not fall within [the IGJA's] definition … simply because the report happens to mention in passing proposals for reform." Petitioner's Redacted Brief at 29. In Petitioner's view, that is exactly what the Report does and simply because the grand jury tacked on a few paragraphs of generalized recommendations at the end of the document does not bring the Report within the IGJA's definition. As such, Petitioner concludes the grand jury lacked the statutory authority to adopt the Report under the IGJA, and the supervising judge erred when she accepted the Report and ordered its public release.

In contrast, the DAO argues the report clearly satisfies the IGJA's definition.[7] It asserts the Report proposes recommendations for government action in the public

---

[7] The DAO previously filed five volumes of appendices, including four *in camera*, containing various grand jury materials. Prior to submitting its brief, the DAO filed an application requesting leave to cite and rely upon those appendices as if they were (continued…)

interest and, taken as a whole, the Report and its recommendations are motivated by an important public purpose beyond relief or condemnation concerning a narrow group of individuals, and Petitioner admits as much. DAO's Redacted Brief at 35 (citing Petitioner's Redacted Brief at 22). Rather, according to the DAO, the Report's recommendations are motivated by a goal of addressing deficiencies going forward and demand "legislative, executive, or administrative action in the public interest based upon stated findings[,]" *id.* at 36 (quoting *Investigation No. 18*, 224 A.3d at 332), and, contrary to Petitioner's assertion, the Report's recommendations were not added as an afterthought. In the DAO's view, the recommendations should not be considered in a vacuum but instead it is the grand jury's detailed factual findings that convey the pressing need to address these problems going forward. The DAO further argues Petitioner's concentration on the fact that the recommendations consist of only seven pages of the Report is misplaced. It compares the Report with the grand jury report in *In re Fortieth Statewide Investigating Grand Jury,* 190 A.3d 560 (Pa. 2018) *(Fortieth I)* and *In re Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712 (Pa. 2018) (*Fortieth II*), which was 900 pages with only eight pages allotted to explicit recommendations. As such, the DAO contends the Report satisfies the second prong of the IGJA's definition of an "investigatory grand jury report."

The DAO also asserts the Report satisfies the statutory definition because it relates to "public corruption", as the Report addresses unlawful activity of public employees or officers in connection with their employment or office. In the DAO's view, the clear and

___

contained within the reproduced record in lieu of supplementing the reproduced record. In its application the DAO asserted counsel for Petitioner did not object to its request. Neither Petitioner nor the OAG filed a response to the DAO's application. As the appendices are already part of the record, the DAO's application is unnecessary and, therefore, denied. *See* Pa.R.A.P. 2152(c) ("The fact that parts of the record are not included in the reproduced record shall not prevent the parties or the appellate court from relying on such parts.").

unambiguous language of the IGJA extends to unlawful conduct that is not necessarily criminal. The DAO asserts the Report addresses unlawful conduct regarding law enforcement's interaction with the suspect and also addresses the inadequate investigation of any potential unlawful conduct pertaining to that interaction. Thus, the DAO argues the Report satisfies the "public corruption" prong of the "investigatory grand jury report" definition.

The OAG agrees with the DAO that the Report recommends executive, legislative, or administrative action in the public interest. It asserts the Report is distinct from the report we ordered sealed in *Investigation No. 18*, which we found only "arguably" proposed executive or administrative action. According to the OAG, the recommendations in the report in *Investigation No. 18* were not in the public interest because they were not genuinely directed at broad based legislative, executive, or administrative action, but rather only sought to punish individuals who could not be criminally charged or prosecuted. It contends that the Report, on the other hand, addresses significant matters of general welfare and that, while it certainly criticizes the actions of certain individuals, it addresses their performance in public or governmental roles and the criticisms are not the ends in themselves. Further, contrary to Petitioner's contention, the OAG argues the fact that the bulk of the Report comprises a detailed factual summary is completely consistent with the statutory definition and purpose of an investigating grand jury report, as the validity of the recommendations depend on the supporting facts. As such, the OAG argues the Report meets the IGJA definition of an "investigatory grand jury report." The OAG does not address the "public corruption" prong of the IGJA's definition.

The participants make clear in their arguments that the disposition of Petitioner's first issue rests on whether the Report satisfies the IGJA's definition of an "investigatory

grand jury report."  Resolution of this issue constitutes a question of law, for which our scope of review is plenary, and our standard of review is *de novo.  Investigation No. 18,* 224 A.3d at 332 (citing *Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017)).  As set out above, for a report to qualify as an investigatory grand jury report under the IGJA, it must either (1) relate to organized crime, public corruption, or both or (2) propose recommendations for legislative, executive, or administrative action in the public interest. 42 Pa.C.S. § 9542 (Definitions).  To the extent that our analysis of the issue requires us to interpret the IGJA, our interpretation is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501 – 1991.  *Investigation No. 18*, 224 A.3d at 332.  The object of all statutory interpretation is to ascertain the intent of the legislature.  1 Pa.C.S. § 1921(a).  The best way to ascertain that intent is through the plain language of the statute and when the statutory language is clear "it is not to be disregarded under the pretext of pursuing its spirit."  *Id.* at § 1921(b); *Investigation No. 18*, 224 A.3d at 332.

We begin by considering if the Report satisfies the first prong of the "investigatory grand jury report" definition.  Since none of the participants argue the Report addresses "organized crime," the only question is whether the Report addresses "public corruption" as that term is defined by the IGJA.  As stated above, the IGJA defines "public corruption" as, in relevant part, "[t]he unlawful activity under color of or in connection with any public office or employment of … any public official or public employee, or the agent of any public official or public employee under color of or in connection with any public office or employment[.]"  42 Pa.C.S. § 9542 (Definitions).  We now hold that, under the plain language of the IGJA, in order for a report to address "unlawful activity" the report must not only describe the activity but also what makes that activity unlawful, specifically what laws have been violated.

Upon review, we conclude the Report fails to satisfy this requirement. It spends an extensive amount of space reciting the activity of certain nonindicted individuals that the grand jury found objectionable. The Report, however, does not identify any laws that were violated by those individuals or explain how the objectionable activities and behavior were unlawful. The Report does reference internal law enforcement directives the grand jury believes certain nonindicted individuals violated but does not explain how violation of those internal directives is necessarily unlawful. The DAO argues that certain actions described in the Report are "almost textbook conditions that not only relate to public corruption but enable and perpetrate it." DAO's Redacted Brief at 40. The issue, however, is not whether the report addresses "public corruption" as that term may be generally used, but, rather, if the Report satisfies the IGJA's definition of "public corruption." We hold that without explaining how conduct the grand jury finds objectionable is unlawful, a grand jury report cannot be deemed to address "public corruption" as that term is defined by the IGJA.

As to the second prong of the IGJA's definition, we must determine if the Report "proposes recommendations for legislative, executive, or administrative action in the public interest." 42 Pa.C.S. § 9542 (Definitions). We addressed this exact issue in *Investigation No. 18*, where we found a grand jury report did not satisfy the IGJA definition. There, we found that the report's recommendations "[t]o some degree … arguably propose executive or administrative action." *Investigation No. 18*, 224 A.3d at 332. However, in reviewing the report as a whole, we determined that the recommendations were not in the "public interest" as that term is used in the IGJA because they were not aimed at "broad-based legislative, executive or administrative action." *Id.* Rather, we found the recommendations were focused exclusively on "(1) punishing a specific person for alleged criminal conduct for which the person cannot be tried due to the running of the

relevant statutes of limitations; and (2) providing resources and catharsis to the victims of these alleged crimes." *Id.*

The Report here suffers from comparable flaws. As Petitioner acknowledges, and similar to the report in *Investigation No. 18*, the Report's recommendations arguably propose some executive, legislative, or administrative action. *See* Petitioner's Redacted Brief at 22. However, again, as in *Investigation No. 18*, when read in the context of the Report as a whole, it is clear that the recommendations are not in the "public interest" as that term is used in the IGJA. While Petitioner cites to the Report's structure and the scant space devoted to the recommendations in comparison to the length of the Report, there is no specific ratio of factual recitation to recommendations that are required under the IGJA. An extensive report with a relatively short portion dedicated to recommendations can satisfy the IGJA's definition of an "investigatory grand jury report" as long as the recommendations can reasonably be found to be in the "public interest" as that term is used in the IGJA.[8] That, however, is not the case with the Report. Based on the entirety of the Report, it is evident that it is not focused on broad-based legislative, executive, or administrative action, but, rather, it is focused exclusively on (1) meting out punishment and blame for certain named but unindicted individuals the grand jury believed are deserving of such denunciations; and (2) providing long awaited answers to

---

[8] The DAO observes that the report at issue in *Fortieth I and Fortieth II* was 900 pages, only eight of which were dedicated to making explicit recommendations relating to changing certain statutes of limitations, clarifying penalties for failure to report child abuse, and prohibiting certain non-disclosure agreements. DAO's Redacted Brief at 37 (citing *Rpt. No. 1 of the Fortieth Statewide Inv. Grand Jury*, No. CP-02-MD-571-2016, at 307-315 (Allegheny Ct. Com. Pls.)). The DAO goes on to assert that there was "no suggestion, however, that the report in *Fortieth [I* and *Fortieth II*] failed to meet the statutory criteria or that its recommendations were somehow too succinct to be in the public interest." *Id.* We note, however, that the question of whether the report at issue in the *Fortieth* cases satisfied the IGJA's definition of an "investigatory grand jury report" was not before the Court and, thus, we did not opine on the relationship between the length of the recommendations in comparison to the length of the report as a whole.

the deceased-accused's family.   As we cautioned in *Investigation No. 18*, "it is not 'in the public interest,' as contemplated by the [IGJA], to utilize an investigating grand jury report to mete out punishment or provide relief for specific victims of unproven, albeit serious, crimes when the traditional means of bringing an individual to justice – *e.g.*, criminal prosecution – are otherwise unavailable."  *Investigation No. 18*, 224 A.3d at 332.

As the Report does not satisfy either prong of the IGJA's definition of an "investigatory grand jury report" we find that the Report does not qualify as an "investigatory grand jury report" under the IGJA.  As such, the grand jury did not have the authority to adopt the Report and the supervising judge erred by accepting the Report and ordering it to be unsealed.  We, therefore, vacate the supervising judge's order unsealing the Report and remand the matter to the supervising judge for the entry of an order permanently sealing the Report.  Based on our disposition of this issue, it is unnecessary to address the second and third issues Petitioner raised in his Petition for Specialized Review.

## B.  Extraordinary Jurisdiction

As noted above, in addition to the three issues Petitioner raised, the Court exercised our extraordinary jurisdiction pursuant to 42 Pa.C.S. § 726[9] and directed the participants to address the following issue:

> What type or degree of criticism of a named but nonindicted individual in a grand jury report warrants notice and an opportunity to be heard under 42 Pa.C.S. § 4552(e) and did the supervising judge's discretionary decision to

---

[9] **§ 726. Extraordinary jurisdiction**

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726.

provide notice and an opportunity to be heard to some, though not all, named but nonindicted individuals in the grand jury's report comport with principles of due process and the fundamental right to reputation under Article 1, Section 1 of the Pennsylvania Constitution, as interpreted by [*Fortieth I*]?

Petitioner argues that any criticism of a named but nonindicted individual in an investigatory grand jury report warrants, at the very least, notice and an opportunity to be heard pursuant to Section 4552(e). According to Petitioner, a grand jury report can cause irreparable harm to an individual's constitutionally protected right to reputation as the conclusions contained therein need only be supported by the least stringent evidentiary standard and have not been subject to adversarial testing. Petitioner continues that because the right of reputation is a fundamental constitutional entitlement, any criticism of a named unindicted individual requires the provision of some measure of due process consistent with the test employed by this Court in *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018). According to Petitioner, in *Bundy*, the Court adopted the tripartite test announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process is due before the state deprives an individual of a fundamental right. Petitioner asserts ascertaining what process is due entails a balancing of three considerations: (1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state. Petitioner's Redacted Brief at 49 (citing *Bundy*, 184 A.3d at 557).

Petitioner asserts the Court applied the *Bundy/Mathews* factors in *Fortieth I* to conclude:

> The private interest affected by [the grand jury report] is a fundamental one equivalent to life, liberty and property; the risk of an erroneous deprivation is substantial in light of the inherent limitations of the grand jury system, and the administrative burden in providing *some* additional process [beyond that provided for in the IGJA] is not too great a requirement.

[J-4-2024] - 14

*Id.* at 50 (quoting *Fortieth I*, 190 A.3d at 575, n. 23 (second set of brackets provided by Petitioner)). Petitioner contends that the same analysis applies to the notice requirement under Section 4552(e) and requires that "all individuals subjected to any degree of criticism in a grand jury report should be provided with notice and an opportunity to be heard." *Id.* at 50-51.[10]

The DAO counters that under the IGJA a supervising judge has the sole discretion to permit a nonindicted individual who is criticized in a grand jury report to submit a response to the allegations contained in the report. DAO's Brief at 60 (citing 42 Pa.C.S. § 4552(e); *Fortieth I*, 190 A.3d at 566 n.4). According to the DAO, that discretion is broad but not boundless and a supervising judge abuses her discretion if she, *inter alia*, misapplies the governing legal standard, including those standards imposed by the Constitution. *Id.* at 61 (citing *Commonwealth v. Baumhammers*, 960 A.2d 59, 86 (Pa. 2008)). Here, in the DAO's view, the supervising judge was constrained to exercise her discretion such that named, unindicted individuals would not be deprived of their inherent and indefeasible rights of acquiring, possessing, and protecting their reputations. However, the DAO asserts there is no Constitutional right to be free from criticism as such. Rather, the DAO asserts, "the fundamental rights at stake are of 'acquiring, possessing, and protecting … *reputation*' – in other words, one's 'good name,' the community's opinion of one's 'character,' or one's standing in the community." *Id.* at 62 (citing *Respublica v. Oswald*, 1 U.S. 319, 324 (Pa. 1788) (emphasis provided by DAO)). Accordingly, the DAO proposes that a supervising judge must give notice and an

---

[10] Petitioner also argues that the notice and opportunity to respond afforded him under Section 4552(e) were insufficient to protect his right to reputation in light of the Report's allegations against him and that the preponderance of the evidence standard the IGJA imposes on a grand jury to support its findings in an investigatory grand jury report does not adequately protect an individual's right to reputation. Petitioner's Redacted Brief at 56-61. As these arguments go beyond the scope of the limited question over which the Court exercised our extraordinary jurisdiction, we will not address them.

opportunity to be heard to named, nonindicted individuals who are criticized in a grand jury report only to the extent that criticism is likely to impair their "good name," the community's opinion of their "character," or their standing in the community. *Id.*

The DAO asserts its proposed standard is consistent with this Court's holdings in *Fortieth I* and *Fortieth II*, where, according to the DAO, we did not hold that all named unindicted individuals criticized in a grand jury report were necessarily guaranteed a corresponding right-of-reputation remedy. Instead, according to the DAO, we agreed with the Commonwealth that the allegations contained in the report at issue in the *Fortieth* cases impugned the reputations of certain individuals. Further, the DAO contends the Court in the *Fortieth* cases held that, at a minimum, reputational rights attach and are guaranteed when the primary objective of the grand jury report is to publicly censure the conduct of specific individuals, as compared to a grand jury report that is designed to address general welfare concerns but may have a collateral impact on reputational rights. *Id.* at 62-63 (emphasis removed) (citing *Fortieth I*, 190 A.3d at 574).

Against that backdrop, the DAO contends the Report clearly was addressed to the general welfare but may have some collateral impact on the reputational rights of named, unindicted individuals rather than having the objective to publicly censure those individuals. As such, in the DAO's view, the supervising judge correctly determined that the Report contained a spectrum of criticism. On one end were individuals whose conduct may have amounted to merely an administrative or policy violation. On the other end were individuals, such as Petitioner, the criticism of whom the supervising judge found amounted to something that could potentially get them fired and alleged very close to criminal behavior. It was reasonable for the supervising judge to find that the criticism of the latter group could potentially impact the individuals' good names and standing in the community if those individuals were identified while the criticism of the former group of

individuals would not. As such, the DAO asserts, it was reasonable for the supervising judge to give the latter group notice and the right to respond to the Report but to decline to give such notice and opportunity to the former group.

For its part, the OAG asserts that Article I, § 1's protection of reputation is informed by the law of defamation, which permits a degree of criticism to further important societal interests. Citing William Penn's *Frame of Government of Pennsylvania* and this Court's holding in *Respublica, supra*, the OAG argues that the right of reputation derives from common law principles of defamation. OAG's Redacted Brief at 23. Under this view, "due process protections are properly triggered by statements that meet the standard for libel or slander, *i.e.,* are capable of defamatory meaning." *Id.* at 24. A statement is capable of defamatory meaning, and thus implicates the right of reputation, according to the OAG, where it, *inter alia*, lowers a community's estimation of the individual, deters third parties from associating with the individual, and shows the individual lacks honor and integrity. *Id.* at 24-25 (citing *Baird v. Dun & Bradstreet*, 285 A.2d 166, 169 (Pa. 1971); *Cosgrove Studio & Camera Shop, Inc., v. Pane*, 182 A.2d 751, 53 (Pa. 1962)).

When the right to reputation is implicated, the OAG argues it must be balanced by other constitutional values and is protected where due process is provided. The OAG recognizes that the right of reputation is on the same plane as those rights pertaining to life, liberty, and property. It asserts, however, that the right to reputation must be weighed together with Article I, § 7's right to free communication of thoughts and opinion, which holds that debate on public issues should be uninhibited, robust, and wide open. A third value that must be balanced, in the OAG's analysis, is the investigative function of the grand jury itself. The OAG asserts the grand jury exists to guard the rights and liberties of the people and it is a particularly suitable body to investigate public officials and public evils. It further asserts that this Court has recognized the value of grand jury reports

designed to address general public welfare concerns notwithstanding those reports may have collateral impact on certain individual's right of reputation. *Id.* at 28 (citing *Fortieth I*, 190 A.3d at 574).

According to the OAG, in the public sphere, this balance is kept by the application of due process principles and the oversight of the supervising judge. Due Process, the OAG contends, is a flexible concept whose central demands are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* at 29 (citing *Bundy*, 184 A.3d at 557; *In re Fortieth*, 197 A.3d at 717). Given its position, the OAG acknowledges that certain individuals criticized in the Report whom the supervising judge failed to give notice and an opportunity to respond should have received such notice and opportunity. As the grand jury is no longer in session, the OAG suggests that revisions or redactions to the Report by the supervising judge may be required, after which the Report could properly be released.

Section 4552(e) of the IGJA states:

> **(e) Authorization of response by nonindicted subject.** – If the supervising judge finds that the report is critical of an individual not indicted for a criminal offense the supervising judge may in his sole discretion allow the named individual to submit a response to the allegations contained in the report. The supervising judge may then in his discretion allow the response to be attached to the report as part of the report before the report is made part of the public record pursuant to subsection (b).

42 Pa.C.S. § 4552(e). We exercised extraordinary jurisdiction to determine "what type or degree of criticism of a named but nonindicted individual in a grand jury report warrants notice and an opportunity to be heard under" Section 4552(e). Order, 2/10/23.

Individuals' "inherent and indefeasible" right to their reputation is enshrined in the Pennsylvania Constitution. PA CONST. art 1, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property

and reputation, and of pursuing their own happiness."). This Court has been clear that the right to reputation is not some lesser right but, rather, a fundamental constitutional entitlement on the same plane as the rights to life, liberty, and property. *Fortieth I*, 190 A.3d at 573 (citing *Am. Future Sys., Inc. v. Better Business Bureau of Eastern Pa.,* 923 A.2d 389, 395 n.7 (Pa. 2007)). *See also Driscoll v. Corbett¸* 69 A.3d 197, 210 (Pa. 2013) (acknowledging the right to reputation as among the foundational freedoms); *R. v. Commonwealth Dep't of Public Welfare*, 636 A.2d 142, 149 (Pa. 1994) (this Court regards the right to reputation "as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection.") (citations omitted)).

This fundamental right to reputation is implicated when one is criticized in a grand jury report. As we stated in *Fortieth I*,

> The judicial imprimatur under which a grand jury operates gives to its pronouncements a ring of proven truth which they may not deserve. A formal indictment, supported by probable cause, is followed by a public trial during which a whole range of constitutional provisions insure a fair hearing for the accused. An informal report, on the other hand, drafted after a secret investigation and based on an uncertain standard of proof, may be remembered long after equally informal denials or objections forthcoming from its targets are forgotten. And the report's readers may understandably but incorrectly assume that at least the rudiments of due process notice and opportunity to be heard were afforded the accused.

*Fortieth I*, 190 A.3d at 571 (quoting *In re Grand Jury of Hennepin Cty.*, 271 N.W.2d 817, 819 (Minn. 1978)). A grand jury's pronouncements in a grand jury report run a substantial risk of being seen "as carrying the weight of governmental and judicial authority." *Id.* at 573. As such, nonindicted individuals who are named in a grand jury report run the risk of being deprived of their fundamental right to reputation by the publication of such a report and are entitled to due process prior to that deprivation.

"Due process is a flexible concept which 'varies with the particular situation.'" *Bundy*, 184 A.3d at 557 (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). In *Bundy*,

this Court adopted the tripartite balancing test set out by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976), to determine what due process requires in a particular situation: "(1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state." *Id.* In *Fortieth I,* the Court endorsed the use of the *Mathews* factors as directly pertinent in analyzing due process claims involving the IGJA. *See Fortieth I*, 190 A.3d at 575, n.23. In balancing these factors, we now determine that, at the least, due process requires that all named but nonindicted individuals criticized in a grand jury report must be given notice and the opportunity to respond as provided in Section 4552(e).[11]

As discussed above, the Pennsylvania Constitution places the right to reputation on the highest plane alongside the rights to life, liberty, and property. *Fortieth I*, 190 A.3d at 573 ((citing *Am. Future Sys., Inc. v. Better Business Bureau of Eastern Pa.,* 923 A.2d 389, 395 n.7 (Pa. 2007)). The right to reputation was first preserved in our Constitution of 1790 and has remained entrenched in our charter through four iterations. *Id.* at 574. As such, the private interest affected by the publication of a grand jury report criticizing a named unindicted individual is a fundamental one of the highest regard. *Fortieth I*, 190 A.3d at 575, n.23.

---

[11] The only question currently before the Court is what degree of criticism is needed to warrant notice and the opportunity to respond as provided in Section 4552(e). The issue of the constitutionality of Section 4552(e) and whether the process provided therein is sufficient to satisfy due process as to named, nonindicted individuals is not currently before us and we decline to address it today. We do note, however, that in *Fortieth I*, we concluded that "the 'right to written response' – entailing the opportunity to possibly append a hearsay rebuttal statement to a 900-page report otherwise impugning an individual as a sexual predator or facilitator alongside more than 300 others amidst the hierarchy of a religious institution – is not sufficiently effective." *Fortieth I*, 190 A.3d at 574.

We also find that the risk of the erroneous deprivation of a named unindicted individual's right to reputation is high, which can be mitigated to some degree by giving each named unindicted individual notice and the opportunity to respond as provided by Section 4552(e). This is in line with our determination in *Fortieth I* that "the risk of an erroneous deprivation is substantial in light of the inherent limitations of the grand jury system[.]" *Fortieth I*, 190 A.3d at 575, n.23.

This risk is illustrated in the OAG's argument. The OAG argues that criticism alone is not enough to implicate the right to reputation, but rather the criticism must rise to the level of a defamatory statement for the right to be implicated and necessitate notice under Section 4552(e). OAG's Redacted Brief at 23-25. Even with that standard, however, the OAG acknowledges that several individuals named in the Report who were entitled to receive notice and an opportunity to respond did not receive that opportunity from the supervising judge. *Id.* at 30-33. The OAG, therefore, recommends the Court remand the case back to the supervising judge where some revisions may be required. *Id.* at 34. If Petitioner had not filed the current action with this Court, the Report would have been published and the individuals identified by the OAG would have been erroneously deprived of their right to reputation with no available remedy. This is the perfect illustration of the risk of erroneous deprivation if every named, unindicted individual criticized in a grand jury report is not given notice and an opportunity to respond. That risk can be balanced, and lowered to an extent, by, at the very least, giving notice to all named unindicted individuals criticized to any extent pursuant to Section 4552(e). As we stated in *Fortieth II,* it is a "bedrock principle of our legal system which has undergirded it since its inception: where there is a right, there is a remedy." *Fortieth II*, 197 A.3d at 723 (internal citations, quotations, and brackets omitted).

Grand juries have a long history in both the United States and the Commonwealth, which includes their investigative and reporting functions. *See Fortieth I*, 190 A.3d at 568-71. The General Assembly has chosen to codify the grand jury's place in the Commonwealth through the IGJA, which permits an investigatory grand jury to submit a report to a supervising judge that addresses certain specific issues, including public corruption and recommendations in the public interest. 42 Pa.C.S. §§ 4552(a), 4542. The IGJA also allows for the publication of such reports. *Id.* at § 4552(b). These roles of investigating grand juries are the product of policy decisions made by the General Assembly. *See Fortieth II*, 197 A.3d at 721. Given those policy determinations, the Commonwealth has an interest in the publication of grand jury reports. That interest, however, is not unfettered and must be balanced against individuals' right to reputation. *See Fortieth I,* 190 A.3d at 573 ("In the context of such fundamental rights, the historical acceptance of the institution of the grand jury can go only so far in justifying the relaxation of procedural requirements for the protection of those rights."). In light of that fundamental right, requiring that notice be given to each named, unindicted individual criticized in a grand jury report does not create an undue burden on the Commonwealth, nor does it unduly restrict the Commonwealth's interest in publishing investigative grand jury reports.[12] *See Fortieth I*, 190 A.3d at 575, n.23 ("[T]he administrative burden in providing *some* additional process is not too great to obviate the requirement.") (emphasis in original).

---

[12] In *Fortieth I,* we distinguished between grand jury reports that are designed to address general welfare concerns but may have a collateral impact on individuals' reputational rights, and reports where the primary objective is to publicly reprimand specific individuals. *Fortieth I*, 190 A.3d at 574. We further cautioned that grand juries "setting about the latter course should apprehend that increased procedural protections are implicated in the interest of fundamental fairness." *Id.* We make no distinction between the two types of grand jury reports in considering whether all criticized individuals are entitled to notice and an opportunity to respond pursuant to Section 4552(e). The process provided for is of such a minimal kind that it is required no matter the nature of the report.

We are cognizant that Section 4552(e) affords the supervising judge with discretion to provide a nonindicted, named individual with notice and an opportunity to respond to allegations in a proposed grand jury report. 42 Pa.C.S. § 4552(e) ("If the supervising judge finds that the report is critical of an individual not indicted for a criminal offense the supervising judge may in his sole discretion allow the named individual to submit a response to the allegations contained in the report."). Judicial discretion requires a judge to act "in conformity with law upon the facts and circumstances before the court" in making decisions. *In re Philadelphia County Grand Jury, April 1943*, 329 A.2d 199, 204 (Pa. 1943). A court abuses its discretion "where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record." *Hangey v. Husqvarna Professional Products, Inc.*, 204 A.3d 1120, 1141 (Pa. 2023) (quoting *Zappala v. Brandolini Prop. Mgmt., Inc.*, 909 A.2d 1272, 1284 (Pa. 2006)). To the extent the issue is whether the law has been misapplied, the question is a purely legal one that is reviewed *de novo*. *Brady v. Urbas*, 111 A.3d 1155, 1161 (Pa. 2016). Further, constitutional challenges are also questions of law over which our standard of review is *de novo,* and our scope of review is plenary. *Interest of Y.W.-B.*, 265 A.3d 602, 615 (Pa. 2021). *See also Washington v. Department of Public Welfare of Commonwealth*, 188 A.3d 1135, 1149 (Pa. 2018); *Pennsylvania Prison Society v. Commonwealth*, 776 A.2d 971, 977 n.1 (Pa. 2001).

As previously stated, the question of whether an unindicted, named individual criticized in a grand jury report receive notice and an opportunity to respond pursuant to Section 4552(e), implicates the individual's fundamental constitutional right to reputation. Therefore, even though Section 4552(e) gives the supervising judge discretion with regard to whether or not to give a criticized individual notice and an opportunity to respond, the supervising judge's failure to give such notice and opportunity raises a

constitutional question which this Court reviews *de novo*. *See In re N.C.*, 105 A.3d, 1199, 1210 (Pa. 2014) (recognizing that while appellate courts review trial courts' evidentiary decisions for an abuse of discretion, whether the admission of out of court statements violates the Confrontation Clause is a question of law, reviewed *de novo*). If a judge exercises his or her discretion in a way that violates an individual's constitutional rights, the judge has necessarily abused his or her discretion. As we find that due process requires all criticized, nonindicted individuals to receive notice and an opportunity to respond under Section 4552(e), a supervising judge's refusal to grant such notice and opportunity to be heard violates our Constitution and is, as such, *per se* an abuse of discretion. *See Fortieth II*, 197 A.3d at 728 (Dougherty, J. concurring) (concluding that supervising judge's failure to publish a relevant, appropriate response filed by an unindicted individual given notice pursuant to Section 4552(e) would constitute an abuse of discretion.). The due process provided by the notice and opportunity to be heard pursuant to Section 4552(e) is of such a minimal kind it is required to be given whenever a grand jury submits a proposed investigatory grand jury report to the supervising judge, notwithstanding the distinction we made in *Fortieth I* between grand jury reports that are designed to address general welfare concerns but may have a collateral impact on individuals' reputational rights, and reports where the primary objective is to publicly reprimand specific individuals. *See Fortieth I*, 190 A.3d at 574.

The supervising judge in this case provided Section 4552(e) notice and opportunity to respond to some, but not all, named, unindicted individuals criticized in the Report. We conclude her failure to provide such notice and opportunity to all named, nonindicted individuals criticized in the Report was in error. In such an instance, the Court would normally remand the case to the supervising judge to provide the required notice to all individuals or to make necessary redactions to the Report to protect those individuals'

right to reputation, as the grand jury is no longer empaneled. That is unnecessary here, however, as we have already determined that the Report shall remain sealed.

### III.    Conclusion

We vacate the supervising judge's order directing the publication of the Report and remand the case back to the supervising judge with instructions to permanently seal the Report.

Justices Dougherty, Brobson and McCaffery join the opinion.

Justice McCaffery files a concurring opinion.

Justice Donohue files a dissenting opinion in which Chief Justice Todd and Justice Wecht join.